209 N.J. Super. 362 (1986)
507 A.2d 751
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN T. GOETASKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1986.
Decided April 18, 1986.
*363 Before Judges KING, O'BRIEN and SIMPSON.[1]
Jeffrey V. Puff argued the cause for appellant.
Ellen E. Loughney, Assistant County Prosecutor, argued the cause for respondent (Joseph A. Fusco, Prosecutor, attorney; David Arrajj, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we must decide whether a motor vehicle stop by a police officer on less than articulable suspicion of criminal conduct passes State and federal constitutional muster.[2] We conclude that the officer had reason to believe the circumstances were enough beyond the ordinary, though not necessarily criminally suspicious, that the vehicle stop was constitutionally permissible.
This is what happened. On June 27, 1984 at about 4 a.m. a State Trooper on routine patrol observed defendant slowly driving his vehicle on the northbound shoulder of State Highway 54 in a rural, 50 miles-per-hour zone with his left-turn indicator flashing. After observing defendant operating his vehicle in this manner for one-tenth of a mile, the trooper stopped the vehicle. When the trooper approached the car and talked with the driver, he made observations which resulted in the charge and conviction for driving a motor vehicle while under the influence of alcohol. N.J.S.A. 39:4-50. Defendant moved to suppress the evidence produced by the stop, claiming an unconstitutional stop and seizure of his person under the State and federal constitutions. See State v. Kirk, 202 N.J. Super. *364 28, 35-36 (App.Div. 1985). Defendant lost his motion to suppress the evidence against him resulting from the vehicle stop. R. 3:5-7. He was found guilty in his initial trial in the Folsom Municipal Court and was again found guilty after a trial de novo on the record in the Law Division, Superior Court. Under R. 3:23.
The record is clear that no specific violation, such as swerving erratically or equipment defect, was observed by the officer. The question is whether driving slowly on the shoulder for 1/10th of a mile at 4 a.m. with a left-turn signal blinking was sufficient reason for the officer to stop defendant and inquire generally if there was any problem or difficulty. While driving on the marked shoulder of the highway is not a violation of our Motor Vehicle Code, a "shoulder" is defined by the Code as "that portion of the highway, exclusive of and bordering the roadway, designed for emergency use but not ordinarily to be used for vehicular travel." N.J.S.A. 39:1-1. At least by statutory definition, driving on the shoulder for any distance does justify legitimate police curiosity about the situation.
We must here balance the competing interests  "a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). We must insure "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of the officers in the field." Ibid.; see Delaware v. Prouse, 440 U.S. 648, 654-655, 99 S.Ct. 1391, 1396-97, 59 L.Ed.2d 660 (1979). We conclude that the stop of defendant in this case was not arbitrary, random and wholly without justification in the individual circumstance, in contrast to the unconstitutional stops in cases like Brown v. Texas and Delaware v. Prouse. We agree with the prosecutor's argument in the municipal court in this case that a "police *365 officer who observes [such conduct] would have reason to believe that either there's something wrong with the driver, he's having a problem or there is something out of the ordinary. People don't drive on the shoulder of the road, especially with their left turn signals on [in the middle of the night in a rural area] if there's not something wrong."
We think the municipal court judge reached a reasonable conclusion when he found the trooper had a right "to inquire as to perhaps maybe something was wrong" and that Law Division Judge Perskie was justified when he said: "I am satisfied beyond any question that there was probable cause for the officer to have effected a motor vehicle stop at the time and place in question. I am satisfied that the hour of the night and the manner of operation of the vehicle, and the operating on the shoulder of the road are more than sufficient to give a reasonable police officer a basis to stop and make appropriate inquiry."
Professor LaFave reminds us in his chapter discussing searches and seizures for purposes other than securing criminal evidence: "As the Supreme Court correctly noted in Cady v. Dombrowski, [413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973)] local police often have occasion to deal with vehicles in the performance of functions `totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" 2 LaFave, Search and Seizure, § 7.4(f) at 587 (1978 and 1986 Supp.); see also § 6.6(a). This has been described as the "community caretaking function." Cady v. Dombrowski, 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 715.
Only a few courts have considered the propriety of the so-called "benign" automobile stop made to assist the occupant of the vehicle if necessary. A Second Circuit case, United States v. Dunbar, 470 F. Supp. 704 (D.C.Conn. 1979), aff'd. 610 *366 F.2d 807 (2d Cir.1979), held that the officer's good faith belief that the driver he stopped might be lost and needed directions was entitled to extremely slight weight in balancing the public interest against the citizen's right to personal security and freedom from arbitrary interference by law enforcement officers. As the court observed in Dunbar, "... however well-intentioned the stopping may have been in this case, the risk of abuse is real." 470 F. Supp. at 708. A similar result was reached in Doheny v. Commissioner of Public Safety, 368 N.W.2d 1 (Minn.App. 1985).
In contrast, several courts have held that police stops of vehicles were justified to warn occupants that an item of property was endangered or a condition of the vehicle created a potential traffic hazard. See State v. Chisholm, 696 P.2d 41 (Wash. App. 1985) (momentary seizure by stopping driver of a pick-up truck to tell him his hat was in danger of blowing out of vehicle's bed could be justified); Russell v. Municipality of Anchorage, 706 P.2d 687 (Alaska App. 1985) (temporary vehicle stop to warn occupant that misted rear window created a potential traffic hazard was justified). In State v. Parker, ___ N.H. ___, 503 A.2d 809 (1985), the New Hampshire Supreme Court recently upheld a vehicle stop where seemingly innocent circumstances nonetheless in the particular context generated reasonable suspicion that a child passenger in a camper was in danger.
In the case before us, the facts were unusual enough for the time and place to warrant the closer scrutiny of a momentary investigative stop and inquiry. In this case, we will not substitute our judicial hindsight for what appears to us as a sound, nonpretextual exercise of curbstone judgment by the officer. But we do not hesitate to add that this stop is about as close to the constitutional line as we can condone.
Affirmed.
NOTES
[1] With consent of both counsel, Judge Simpson has joined in this opinion.
[2] Art. I, par. 7 of the New Jersey Constitution of 1947 is almost identical in wording to the Fourth Amendment of the Federal Constitution. See State v. Kirk, 202 N.J. Super. 28, 35 (App.Div. 1985).