260 N.J. Super. 75 (1992)
615 A.2d 279
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSE MARTINEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 1, 1992.
Decided October 30, 1992.
*76 Before Judges KING, LANDAU and THOMAS.
Capizola, Fineman, Kutner & Pagliughi, attorneys for appellant (Kenneth A. Pagliughi and Barbara R. Lapham on the brief).
Michael Brooke Fisher, Cumberland County Prosecutor, attorney for respondent (Jon M. Reilly, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Defendant Jose Martinez here contests his Law Division conviction following appeal from the municipal judgment below, on a charge of driving under the influence of alcohol in violation of N.J.S.A. 39:4-50. Sentence has been stayed pending this appeal.
*77 Martinez was stopped by a State Trooper patrolling Deerfield Township shortly after 2 a.m. on October 8, 1990 when the Trooper observed him driving his vehicle "at a snail's pace," although otherwise presenting no occasion for inquiry. At the time of the stop, Martinez and the police vehicle were the only cars on the street.
Martinez contends that the charges should have been dismissed below on his motion for want of justification for the stop. More particularly, he urges that his conviction "steps beyond the constitutional line" which we set in State v. Goetaski, 209 N.J. Super. 362, 507 A.2d 751 (App.Div. 1986), certif. den., 104 N.J. 458, 517 A.2d 443 (1986).
Goetaski had been stopped by a State Trooper when observed driving slowly on the shoulder of a state highway at 4:00 a.m., in a rural fifty m.p.h. zone, with his turn indicator flashing. We held that the stop was constitutional after weighing competing concerns for freedom from arbitrary police invasion of privacy expectations against the gravity of the applicable public concern which, in Goetaski, was a legitimate apprehension about the driver's welfare. We agreed with the State's argument that the patrolling trooper had reason to believe that "either there's something wrong with the driver, he's having a problem or there is something out of the ordinary," and that people do not drive slowly on a rural road shoulder in the middle of the night if there's not something wrong. We observed, however, that the stop was very close to the constitutional line. (See Goetaski, supra, 209 N.J. Super. at 365-366, 507 A.2d 751, and authorities there cited).
Martinez was not in the shoulder of a rural road, nor were his turn indicators or signal flashers activated. He was observed while proceeding on the roadway in a residential twenty-five m.p.h. zone. However, the Trooper testified that Martinez was "travelling at a snail's pace ... less than 10 [m.p.h.]", the operation was "abnormal" in the sense of being excessively slow, and that he followed Martinez in his own car at less than *78 ten m.p.h. N.J.S.A. 39:4-97.1 expressly prohibits driving at "such a slow speed as to impede or block the normal and reasonable movement of traffic ...". There was, of course, no prospect that Martinez would create a traffic jam on the residential street at two o'clock in the morning.
We take notice, however, that operation of a motor vehicle in the middle of the night on a residential street at a snail's pace between five and ten m.p.h. is indeed "abnormal," as the Trooper testified. Such abnormal conduct suggests a number of objectively reasonable concerns: (a) something might be wrong with the car; (b) something might be wrong with its driver; (c) a traffic safety hazard is presented to drivers approaching from the rear when an abnormally slow moving vehicle is operated at night on a roadway without flashers; (d) there is some risk that the residential neighborhood is being "cased" for targets of opportunity. Possibilities (a), (b) and (c) involve the "community caretaking function" expected of alert police officers. See, Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); Goetaski, supra, 209 N.J. Super. at 365, 507 A.2d 751; State v. Marcello, 599 A.2d 357, 358 (Vt. 1991); State v. Pinkham, 565 A.2d 318, 319 (Me. 1989). Possibility (d) implicates the "common-law right to inquire" based upon a founded suspicion that criminal activity might be afoot. See LaFave, Search and Seizure, Sec. 9.2(h) (2d ed. 1987). It is appropriate to consider all of these applicable concerns and balance them against the minimal intrusion involved in a simple inquiry stop. We are satisfied on this balance that the stop was objectively reasonable and fell far short of the line of unconstitutionality we drew in Goetaski.
Affirmed.