**Fred RHEINLANDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–93–244–CR.**

Court of Appeals of Texas,
Austin.

Dec. 7, 1994.

Rehearing Overruled Jan. 11, 1995.

---

Randy T. Leavitt, Minton, Burton, Foster & Collins, Austin, for appellant.

Ken Oden, County Atty., Giselle Horton, Asst. Dist. Atty., Austin, for appellee.

**2.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Before ABOUSSIE, JONES and DALLY *, JJ.

DALLY, Justice (Retired).

Appellant entered a no contest plea before the court and was convicted of the offense of driving a motor vehicle in a public place while intoxicated. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1 (West Supp.1994). He preserved his right to appeal from the trial court's order denying his motion to suppress evidence obtained in an alleged unlawful investigatory stop. We will reverse.

■ Appellant, in his sole point of error, asserts that the trial court erred in its denial of his motion to suppress evidence. The trial court's order denying appellant's motion should not be disturbed on appeal unless there is clear abuse of discretion shown. *Davis v. State,* 829 S.W.2d 218, 220 (Tex. Crim.App.1992); *Freeman v. State,* 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *State v. Carr,* 774 S.W.2d 379, 380 (Tex.App.— Austin 1989, no pet.).

Donald Anthony Haywood, a City of Austin police officer with eleven years experience, testified at the hearing of appellant's motion to suppress. His testimony is undisputed. On April 22, 1992, at about 11:30 p.m., Haywood was driving on an Interstate Highway 35 frontage road when he noticed a Lincoln Continental car ahead of him because its lights frequently changed between high and low beam. The car weaved slightly, but stayed within its lane of travel. It was being driven at between 30 and 35 miles an hour which Haywood thought was unusually slow even though there was no minimum speed limit on the frontage road. Haywood continued to follow the Lincoln Continental as it went from the frontage road to the entry ramp and onto the Interstate Highway. There was scarcely any other traffic on the frontage road and only light traffic on the Interstate where the maximum speed limit was 55 miles an hour. Although Haywood thought erroneously that the minimum speed limit was 45 miles an hour, there is no specified minimum speed limit. As Haywood fol-

lowed the car onto the Interstate, its lights continued to frequently change between high and low beam, the car continued to weave slightly within its own lane of traffic, and it was still being driven at between 30 and 35 miles an hour. Haywood noticed the driver kept his head close to the steering wheel, looked in the rear view mirror, and seemed to be having "trouble with the dash" or trouble seeing. Haywood believed the car was being driven so slowly that it might dangerously hinder traffic. After he had followed the car for a total of one to one and one-fourth miles, Haywood decided to stop the car. After Haywood stopped the car, he found the appellant was the driver and that there was ample probable cause to arrest appellant for driving while intoxicated. Nothing in Haywood's testimony indicates that he believed appellant had violated any law that would justify the initial stop of appellant. Haywood was asked: "Did you stop him because you thought he might be intoxicated, or did you stop him because you thought he might be in violation of a traffic law?" Haywood replied, "I stopped him because of the speed he was driving and also to find out if there was a problem with his eyesight or his lights or some other mechanical reason in his car."

■ Cases in this State hold that, before a person driving an automobile may be stopped and lawfully detained by an officer, that officer must have specific articulable facts to reasonably suspect that the person stopped is associated with criminal activity. For a stop to be lawful under the reasonable suspicion standard, there must exist articulable facts used by the officer to create some reasonable inference of criminal conduct. *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim. App.1992); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989). A stop is justified if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime. *Davis v. State,* 829 S.W.2d 218, 219 (Tex.Crim.App.1992) (citing *Terry v. Ohio,*

---

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003(b) (West 1988).

392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Circumstances short of probable cause may justify temporary detention for the purpose of investigation. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). An investigatory stop is justified if a police officer, based upon specific and articulable facts, reasonably concludes the detained person may be associated with a crime. For a *Terry* stop to be valid, (1) the officer must have a reasonable suspicion that some activity out of the ordinary is occurring; (2) there must be some suggestion to connect the detained person with the unusual activity; and (3) there must be some indication that the activity is related to a crime. *Johnson,* 658 S.W.2d at 626.

*Jefferson v. State,* 830 S.W.2d 320, 323 (Tex. App.—Austin 1992, pet. ref'd).

■ Although not yet recognized or adopted by the Court of Criminal Appeals, the Supreme Court has recognized as an exception to the *Terry* stop a stop made by officers in their "community caretaking function."

We quote from *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, as follows:

Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

Based on the rationale of *Cady v. Dombrowski,* a number of states have recently recognized that in some cases officers exercising their "community caretaking function" are justified in making investigatory stops in the absence of suspected criminal activity. *State v. Pinkham,* 565 A.2d 318, 319 (Me. 1989). ("If we were to insist upon suspicion of activity amounting to criminal or civil infraction to meet the [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety."); *State v. Fuller,* 556 A.2d 224 (Me.1989) (stop of car with its headlights blinking on and off four or five times within a quarter mile upheld); *State v. Harrison,* 111 Ariz. 508, 509, 533 P.2d 1143, 1144 (1975) (stop made because tire was "bouncing" held proper under police power); *State v. Marcello,* 157 Vt. 657, 599 A.2d 357, 358 (1991). ("In some circumstances, however, police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out 'community caretaking' function to enhance 'public safety.'") Similar cases are: *Crauthers v. State,* 727 P.2d 9, 11 (Alaska Ct.App.1986); *State v. Martinez,* 260 N.J.Super. 75, 615 A.2d 279, 281 (App.Div.1992); *In re Clayton,* 113 Idaho 817, 818, 748 P.2d 401, 402 (1988); *Smith v. State,* 301 Ark. 569, 785 S.W.2d 465, 466 (1990); *State v. Vistuba,* 251 Kan. 821, 840 P.2d 511, 514 (1992); *State v. Puig,* 112 Ariz. 519, 520, 544 P.2d 201, 202 (1975).

The State in its brief has cited *McDonald v. State,* 759 S.W.2d 784 (Tex.App.—Fort Worth 1988, no pet.), which relied on *Cady.* The court of appeals in that case held that "when a police officer has a demonstrable reason to believe that a particular individual may be unfit to drive for medical or other reasons, a temporary stop is justified for the limited purpose of investigating the person's well-being." That court of appeals further concluded: "We believe the possible danger such a person presents to the public warrants such a stop before a traffic tragedy occurs." Appellant has also recognized the *McDonald* opinion, and correctly points out: "This position [taken in *McDonald*] has not been adopted by other Texas courts and it is seemingly at odds with the reasonable suspi-

cion of criminal activity standard adopted by this Court and the Texas Court of Criminal Appeals." Although the opinions in *Cady* and *McDonald* make no distinction between moving and non-moving vehicles, the automobiles in both cases were not moving when officers detained their drivers.

When the facts and circumstances of this case are measured by the existing case law in this state which is binding on the trial court and on this Court, we must conclude that the stopping of appellant was unlawful and that the trial court abused its discretion and erred in overruling appellant's motion to suppress, and we so hold.

The judgment of the trial court is reversed, and the cause is remanded to the trial court.

JONES, Justice, dissenting.

The majority speaks approvingly of the "community caretaking function" doctrine. *See Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Apparently believing, however, that several opinions of the Court of Criminal Appeals limit this Court's power to act in the present case, the majority stops short of adopting the doctrine.

I do not believe the Court of Criminal Appeals opinions cited by the majority control the disposition of this appeal. None of those cases dealt with the community caretaking function. Rather, all addressed situations in which law enforcement officers sought to justify a stop based on suspicions of *criminal activity*. Thus, it is not surprising that the opinions in those cases use broad language requiring relatively concrete indications of "criminal activity" before an officer can detain a person on less than probable cause. *See, e.g., Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App.1992) ("A stop is justified if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime."); *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992); *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App.1989). I believe those cases are distinguishable from the present one because they were specifically addressing the doctrine of *Terry v. Ohio*, 392

U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), i.e., whether a detention by an officer can be justified by indications of criminal activity that do not rise to the level of probable cause. In the present case, on the other hand, we are faced with a different legal issue: is a detention justified when a local officer, based on specific and articulable facts, reasonably believes a motorist is in need of assistance as a result of illness, a malfunctioning vehicle, or some other impairment?

The *Terry* doctrine does not govern all warrantless searches and seizures. The ultimate, overarching test under both the U.S. and Texas constitutions is that of reasonableness. U.S. Const. amend. IV ("The right of the people to be secure ... against unreasonable searches and seizures, shall not be violated...."); Tex. Const. art. I, § 9 ("The people shall be secure ... from all unreasonable seizures or searches...."). The *Terry* doctrine provides one avenue of establishing reasonableness; it does not preclude the possibility that others exist. For example, consensual searches and searches prompted by emergencies may be constitutional even though they do not meet the requirements of the *Terry* doctrine. *See Juarez v. State*, 758 S.W.2d 772, 775–76 (Tex.Crim.App.1988) (consensual searches); *Bray v. State*, 597 S.W.2d 763, 764 (Tex.Crim.App.1980) (emergency searches). The present case simply requires consideration of the reasonableness of another category of warrantless searches: searches pursuant to a local law enforcement officer's "community caretaking" function.

Moreover, the context of a traffic stop may be especially appropriate for the community-caretaking doctrine. Safety on public roads often requires a level of energy and attentiveness beyond mere compliance with traffic regulations, and irregularities or eccentricities falling far short of criminal behavior may pose a serious hazard to other drivers. Consequently, as members of the driving public, we accept, if not welcome, a level of scrutiny to which we are not accustomed in other areas of life.

For these reasons, I believe we are not precluded by existing Court of Criminal Ap-

peals opinions from adopting the doctrine of community caretaking function. Indeed, at least one Texas court of appeals has already done so. *See McDonald v. State,* 759 S.W.2d 784, 785 (Tex.App.—Fort Worth 1988, no pet.) ("[W]e hold that when a police officer has a demonstrable reason to believe that a particular individual may be unfit to drive for medical or other reasons, a temporary stop is justified for the limited purpose of investigating that person's well-being.").

I would affirm the conviction.