289 N.J. Super. 80 (1996)
672 A.2d 1273
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CORWIN BARRETT SEYMOUR A/K/A MANUEL TORO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 29, 1996.
Decided March 26, 1996.
*82 Before Judges HAVEY, D'ANNUNZIO and BRAITHWAITE.
Sharon B. Ransavage, Hunterdon County Prosecutor, attorney for appellant (Harvey B. Lester, Assistant Prosecutor, of counsel and on the brief).
Wronko, O'Hara & Millerk, attorneys for respondent (Patrick O'Hara, Jr., Designated Counsel, of counsel and on the brief).
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Hunterdon County Indictment Number 95-04-00063-I charged defendant with first degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and b(1); second degree eluding, N.J.S.A. 2C:29-2b; third degree possession of cocaine, N.J.S.A. 2C:35-10a(1); third degree hindering apprehension, N.J.S.A. 2C:29-3b(1); and fourth degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3. Following the indictment, defendant moved to suppress the cocaine that was thrown from his vehicle after the police signaled defendant to stop. The Law Division Judge granted defendant's motion relying on State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994). The State now appeals by leave granted from the interlocutory order suppressing the cocaine. We reverse.
The State does not contest the factual findings made by the Law Division judge following the hearing on defendant's motion to suppress. We recite those oral findings verbatim:
On January sixteenth, 1995, at approximately 10:34 pm, New Jersey State Trooper Richard McDonnell and Timothy  Trooper Smarth  SMARTH  were patrolling in uniform on Interstate 78 in a marked troop car. While traveling westbound *83 in the left lane of that three-lane highway, Trooper McDonnell observed several vehicles traveling some distance ahead of him in the right lane activating their brake lights and changing lanes to pass a slower moving vehicle, and I think I recall some vehicles moving from the center lane into the left lane.
The slow moving vehicle was ultimately identified as a brown Toyota driving in the right lane and the trooper followed it from the center lane for approximately one quarter of a mile pacing it at approximately 40 miles per hour. Trooper McDonnell decided to stop this vehicle for careless driving and to check on the condition of the driver. Subsequently during the testimony, also indicated one of the reasons was it was impeding traffic. That may be a basis for the careless driving.
Following the one quarter of a mile when he was behind the vehicle when he noticed no other erratic driving, he activated  Trooper McDonnell that is  activated the overhead lights on the troop car in an effort to have the Toyota pull over, and at that point the Toyota's speed increased to 50 miles per hour. Trooper McDonnell then activated his siren and through the public address system directed the driver of the vehicle to pull over.
The Toyota swerved on several occasions onto the right shoulder without stopping and returned to the right lane and speed fluctuating between 35 and 50 miles per hour. The swerving between the right lane and the shoulder occurred a few more times and the trooper observed the passenger throw a white package out of the window.
The swerving continued or the pace with the Toyota in front of the police car continued for approximately one and one quarter miles until the vehicle pulled over on the right shoulder. The speed during this period of time varied between 30 and 50 miles an hour.
Trooper McDonnell approached the driver's side of the vehicle and Trooper Smarth approached the passenger side. Neither occupant wore seat belts which resulted in additional summonses.
Once the occupants of the vehicles [sic] were secured, the troopers returned to the vicinity of Milepost 13.2 where Trooper McDonnell recovered a clear plastic bag containing suspected cocaine on the grassy portion of the shoulder. This is the area where the troopers had observed the material being thrown from the car.
The search of the vehicle revealed a brown paper bag containing three plastic containers of Inositol  INOSOTOL  [sic] powder, commonly used as a cutting agent to dilute cocaine, on the passenger seat of the vehicle. The cocaine was analyzed at the library  the laboratory, was determined to weigh approximately five and a quarter ounces.
On this appeal, the State argues:
THE TRIAL COURT ERRED BY RULING THAT DEFENDANT-RESPONDENT'S SUBSEQUENT ERRATIC DRIVING DID NOT ATTENUATE COURT-RULED PRIMARY TAINT ARISING FROM A NON-PRETEXTUAL ERROR IN POLICE JUDGMENT IN ATTEMPTING TO MAKE A MOTOR VEHICLE STOP.
*84 The State asserts that the trial judge erred, based on these facts, in concluding that Trooper McDonnell's signal to defendant to stop his vehicle was without "articulable and reasonable suspicion," and therefore unlawful. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). It submits that the signal for defendant to stop his vehicle was a reasonable exercise of a police officer's "community caretaking function" and therefore lawful. State v. Goetaski, 209 N.J. Super. 362, 365, 507 A.2d 751 (App.Div. 1986). In our view, resolution of this appeal requires us to determine whether defendant had a right to ignore Trooper McDonnell's signal to stop even if the signal to stop was unlawful.
We begin our discussion of the argument raised by the State by noting that when Trooper McDonnell signaled defendant to stop, defendant was seized within the meaning of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. See 4 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 10.8(a) at 668 (3rd Ed. 1996). "We must here balance the competing interests  `a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" State v. Goetaski, supra, 209 N.J. Super. at 364, 507 A.2d 751 (quoting Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)). Here, we are satisfied that public concerns and interest are expressed in our eluding statute, N.J.S.A. 2C:29-2b. Therefore, we must balance those public concerns and interest with a motorist's right to ignore a law enforcement officer's signal to stop even if the basis for the signal is unlawful.
N.J.S.A. 2C:29-2b provides in pertinent part as follows:
Any person, while operating a motor vehicle on any street or highway in this State, who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle to a full stop commits a crime of the third degree[.]
[Emphasis added.]
*85 Here, defendant's conduct constitutes a violation of the statute. After being signaled to stop, defendant continued to drive his vehicle for one and one quarter miles. In addition, defendant increased his speed from forty miles per hour to fifty miles per hour and swerved several times onto the shoulder of the road. During the swerving action, the speed of defendant's vehicle fluctuated between thirty and fifty miles per hour.
We note that the eluding provision was enacted in 1981, and was an amendment to the resisting arrest statute, N.J.S.A. 2C:29-2a. Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:29-2 (1995). Further, it is no defense to a resisting arrest prosecution that the "law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance." N.J.S.A. 2C:29-2a.
The "non-defense" provision was enacted so as to make clear that a person may not resist even an unlawful arrest. The "non-defense" language was necessary because the language of the statute creates an offense only for resisting "a lawful arrest." Ibid. (emphasis added); Cannel, supra, comment 3 on N.J.S.A. 2C:29-2. Moreover, the "non-defense" language is consistent with our case law on this subject. Our cases hold that a citizen must submit to "an arrest, legal or illegal." State v. Mulvihill, 57 N.J. 151, 155, 270 A.2d 277 (1979); State v. Washington, 57 N.J. 160, 162, 270 A.2d 282 (1970); State v. Koonce, 89 N.J. Super. 169, 184, 214 A.2d 428 (App.Div. 1965).
We are satisfied, however, that the Legislature did not intend to have the "non-defense" language apply to the eluding section of the statute. In 1979, prior to the amendment adding eluding as an offense, the "non-defense" language provided: "It is not a defense to a prosecution under this section that the law enforcement officer was acting unlawfully in making the arrest...." N.J.S.A. 2C:29-2 (1979) (emphasis added). However, when the eluding provision was added to the statute, the "non-defense" *86 language was changed to read as follows: "It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest...." N.J.S.A. 2C:29-2 (1995) (emphasis added). As the eluding provision is a separate subsection from the resisting arrest provision, it is clear that the legislature's revision intended to limit the applicability of the "non-defense" language to the subsection therein contained. "[W]ords used in a statute carry their ordinary and well-understood meanings." State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993).
Although the "non-defense" language does not apply to the eluding statute, the plain language of the eluding statute requires a motorist to immediately stop his vehicle when signaled by a law enforcement officer. The statute does not say that a motorist must stop only when the law enforcement officer lawfully signals the person to stop. The statute says "any signal." N.J.S.A. 2C:29-2(b) (emphasis added). If the language of a statute is "plain and clearly reveals the statute's meaning, the court's sole function is to enforce the statute in accordance with those terms." Phillips v. Curiale, 128 N.J. 608, 618, 608 A.2d 895 (1992).
As stated supra, the language of the resisting arrest statute and our case law make it clear that a citizen must submit to an arrest even if it is illegal. There are strong public policy reasons supporting this position.
As Judge Conford stated in State v. Koonce, supra:
[I]t seems to us that an appropriate accommodation of society's interests in securing the right of individual liberty, maintenance of law enforcement, and prevention of death or serious injury not only of the participants in an arrest fracas but of innocent third persons, precludes tolerance of any formulation which validates an arrestee's resistance of a police officer with force merely because the arrest is ultimately adjudged to have been illegal. Force begets force, and escalation into bloodshed is a frequent probability. The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may differ. In this era of constantly expanding legal protections of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him.
[89 N.J. Super. at 183-84, 214 A.2d 428.]
*87 We conclude that the same public policy considerations require a defendant to bring his vehicle to a full stop immediately after receiving any law enforcement officer's signal, whether the officer's stop of the vehicle is legal or illegal. Fleeing from the police in a motor vehicle with the police in vehicular pursuit could endanger defendant, the officer, other motorist, or pedestrians. Moreover, "one deeming himself illegally [seized] can ... take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him." Id. at 184, 214 A.2d 428. "At the same time, police officers attempting in good faith, although mistakenly, to perform their duties in effecting [a motor vehicle stop] should be relieved of the threat of physical harm" that can result from a high speed motor vehicle chase. Ibid.
Furthermore, the statute would have no meaning and be rendered ineffective if a driver of a vehicle was not required to stop when signaled to do so. There are many lawful reasons, criminal and non-criminal, for a law enforcement officer to signal a motorist to stop. See Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973). See also State v. Goetaski, supra, 209 N.J. Super. at 365, 507 A.2d 751. The criminal penalty for failure to stop is to encourage compliance with the officer's signal.
Having concluded that defendant had no right to ignore Officer's McDonnell's signal and to continue driving for a mile and a quarter, we are satisfied that Officer McDonnell had a right to continue to pursue defendant and stop him. As set forth herein, supra, defendant's continued driving after McDonnell's signal constituted eluding. Because defendant was committing a third-degree crime in the presence of Officer McDonnell, probable cause existed to both seize and arrest defendant. Delaware v. Prouse, supra, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673; State v. Sims, 75 N.J. 337, 352, 382 A.2d 638 (1978). See also United States v. Bailey, 691 F.2d 1009, 1012-19 (11th Cir.1982), cert. denied, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983).
*88 During the pursuit by Officer McDonnell, defendant's passenger threw five and one quarter ounces of cocaine out of the vehicle window. By eluding the police, defendant cannot now assert that the discarding of the cocaine was the result of the illegal conduct of the police. The cocaine was thrown out of defendant's car during the course of defendant's commission of a criminal act. Had defendant obeyed Officer McDonnell's signal, perhaps no criminal charge would have resulted. Or, had he been charged, he would have had a basis to assert the illegality of the police conduct in defense of any prosecution. State v. Koonce, supra, 89 N.J. Super. at 184, 214 A.2d 428.
The State also argues that the seizure of defendant could be justified under the "community caretaking function." State v. Goetaski, supra, 209 N.J. Super at 365, 507 A.2d 751 (quoting Cady v. Dombrowski, supra, 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 715). However, in light of our holding, we see no need to decide on this record whether the "community caretaking function" would provide an alternative basis for defendant's seizure.
We note, however that our concurring colleague concludes that the community caretaking function justified the police action of signaling defendant to stop. We respectfully disagree with his conclusion. Further, we are satisfied that State v. Martinez, 260 N.J. Super. 75, 615 A.2d 279 (App.Div. 1992), relied upon by our colleague, is factually distinguishable. In Martinez, the Trooper testified that defendant was driving his vehicle after 2:00 a.m. "`travelling at a snail's pace ... less than 10 [m.p.h.]', the operation was `abnormal' in the sense of being excessively slow...." Id. at 77, 615 A.2d 279. We are not prepared to conclude on these facts that as a matter of law, "operating a vehicle [in the right lane] at forty miles per hour on an interstate highway at 10:30 p.m. is unusual conduct." Post at concurring Op. page 89, 672 A.2d at page 1278 (D'Annunzio, J. concurring).
We further note, the trial court relied on State v. Tucker, supra, in granting defendant's motion. This case is clearly distinguishable *89 and the court's reliance thereon was misplaced. In Tucker, defendant engaged in no unlawful activity in running when he observed the police. "[T]he sole basis asserted for police action was the youth's flight." 136 N.J. at 168-69, 642 A.2d 401. Here, defendant engaged in an unlawful activity, eluding, and during the eluding discarded the cocaine, thereby giving the police right to pursue and arrest defendant. The cocaine seized as a result of these circumstances is admissible and not violative of the Fourth Amendment of the United States Constitution nor Article I, Paragraph 7 of the New Jersey Constitution.
The order suppressing the cocaine is reversed and the matter remanded to the trial court for proceedings consistent with this opinion.
D'ANNUNZIO, J.A.D. (concurring).
I concur in the reversal of the order suppressing evidence.
The facts as found by the trial judge are uncomplicated. The troopers observed traffic in the far right lane of Interstate 78 braking to avoid overtaking defendant's vehicle, which was being operated at forty miles per hour. Under these circumstances, the trial court erred when it determined that the police had no articulable reasonable basis to stop defendant's vehicle.
A reasonable suspicion of criminal behavior is not necessary to justify a motor vehicle stop. See State v. Martinez, 260 N.J. Super. 75, 615 A.2d 279 (App.Div. 1992); State v. Goetaski, 209 N.J. Super. 362, 507 A.2d 751 (App.Div.), certif. denied, 104 N.J. 458, 517 A.2d 443 (1986); cf. Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714-15 (1973) (noting that because of the extensive state regulation of motor vehicles and traffic, police-citizen contact involving automobiles frequently does not involve criminal investigation but rather "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"). I am persuaded that operating a vehicle at forty miles per hour on an interstate highway at 10:30 p.m. is unusual *90 conduct. The troopers observed the impact of defendant's speed on the flow of traffic when they observed other vehicles traveling in the right lane brake and move into other lanes to avoid overtaking and colliding with defendant's slowly moving vehicle. Based on their observations, I conclude that the troopers were constitutionally justified in signaling defendant to stop by activating the police vehicle's overhead lights. N.J.S.A. 39:4-97.1 supports the validity of the police action in this case because it prohibits operation of a motor vehicle "at such a slow speed so as to impede or block the normal and reasonable movement of traffic...."
The present case is similar to State v. Martinez, supra, 260 N.J. Super. 75, 615 A.2d 279. In that case the police stopped a vehicle traveling at ten miles an hour in a twenty-five miles per hour residential zone. We made the following observations:
We take notice, however, that operation of a motor vehicle in the middle of the night on a residential street at a snail's pace between five and ten m.p.h. is indeed "abnormal," as the Trooper testified. Such abnormal conduct suggests a number of objectively reasonable concerns: (a) something might be wrong with the car; (b) something might be wrong with its driver; (c) a traffic safety hazard is presented to drivers approaching from the rear when an abnormally slow moving vehicle is operated at night on a roadway without flashers; (d) there is some risk that the residential neighborhood is being "cased" for targets of opportunity. Possibilities (a), (b) and (c) involve the "community caretaking function" expected of alert police officers. See Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); Goetaski, supra, 209 N.J. Super. at 365, 507 A.2d 751; State v. Marcello, [157 Vt. 657] 599 A.2d 357, 358 (1991); State v. Pinkham, 565 A.2d 318, 319 (Me. 1989).
[Id. at 78, 615 A.2d 279.]
In Martinez we affirmed the trial court's denial of defendant's motion to suppress. The present case provides a more compelling reason for a police stop of defendant's vehicle because the police observed the adverse impact of defendant's speed on "the normal and reasonable movement of traffic...." N.J.S.A. 39:4-97.1.
In State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994), the Court held that the police were not constitutionally justified in pursuing defendant merely because he had run away after seeing the approach of a marked police car. Tucker is distinguishable because *91 the present case involves the caretaking function inherent in traffic regulation and oversight, and, as previously indicated, defendant's slow speed justified police intervention.