942 A.2d 797 (2008)
398 N.J. Super. 551
STATE of New Jersey, Plaintiff-Respondent,
v.
Cadree B. MATTHEWS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 4, 2008.
Decided March 10, 2008.
*799 Yvonne Smith Segars, Public Defender, attorney for appellant (Michele C. Buckley, Designated Counsel, on the brief).
Theodore J. Romankow, Union County Prosecutor, attorney for respondent (Sara B. Liebman, Assistant Prosecutor, of counsel and on the brief).
Before Judges LINTNER, SABATINO and ALVAREZ.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
Following a denial of his motion to suppress and a subsequent unsuccessful Miranda[1] hearing, defendant, Cadree B. Matthews, pled guilty to third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b (Count One) and third-degree resisting arrest, N.J.S.A. 2C:29-2a (Count Two), as charged in Union County Indictment Number XX-XX-XXXX.[2] Defendant also pled guilty to second-degree unlawful possession of a handgun by a person having previously been convicted of Possession of a Controlled Dangerous Substance with Intent to Distribute, N.J.S.A. 2C:39-7b, as charged in Union County Indictment Number XX-XX-XXXX. He reserved the right to appeal the denial of his motion to suppress the gun recovered by the police.
The judge granted the State's motion for an extended term as a persistent offender, N.J.S.A. 2C:44-3a, and imposed a ten-year term of incarceration with five years of parole ineligibility on the conviction of possession of a weapon by those previously convicted, N.J.S.A. 2C:39-7b. On each of the remaining third-degree offenses, the judge imposed concurrent five-year terms to run concurrent with the ten-year term.
The central issue presented by this appeal is whether an anonymous tip, standing alone, can form the basis for a Terry[3] stop and frisk search, as well as a search of a motor vehicle. We hold that, under the circumstances of this case, both the stop and frisk and the search of the vehicle violated the Fourth Amendment prohibition against unreasonable searches and seizures. Accordingly, the order denying the suppression of the evidence and the judgment of conviction on both weapons offenses are reversed.
The following undisputed facts emerged from the suppression hearing. On February 19, 2005, at approximately 2:30 a.m. while on patrol in his marked vehicle, Officer James Edgar of the Linden Police Department received a radio report from headquarters that an individual in a burgundy Durango with a temporary tag was flashing a gun at the 1100 block of East St. *800 George Avenue in Linden. Edgar and Officer Birch responded in separate police vehicles and arrived at the scene, described as a well-lit business district.
As Birch and Edgar converged on the Durango, they considered it to be a "high risk traffic stop." The Durango had dark-tinted windows, making it difficult to see inside. Birch ordered the driver to take the keys out of the ignition, place them on the roof, and exit the vehicle. He complied. A pat-down search of the driver did not turn up any weapons. The two remaining occupants sitting in the rear of the Durango were ordered out of the car. A pat-down search of both passengers also revealed no weapons. Other officers arrived at the scene. After the driver and occupants were taken to a secure location, several officers searched the vehicle for weapons. A gun was found under the front passenger seat. The driver and occupants were then arrested. Photographs were taken of the gun and its location in the car.
Meanwhile, a black male, later identified as defendant, approached the scene and made several attempts to get into the vehicle. The officers told defendant that there was an investigation in progress and to leave the scene. He refused, became irate and combative, and again tried to get into the Durango. As a result, defendant was placed under arrest. While in the back seat of Edgar's police vehicle in handcuffs, prior to being advised of his Miranda rights, defendant volunteered that the gun was his. Later at headquarters, after being given his Miranda rights, defendant made a similar statement.
Denying defendant's motion to suppress the gun, the judge issued a letter opinion posing the following rhetorical question and answer:
Safety of the officers is both legitimate and weighty. The pat-down search revealing negative results, the question then becomes whether or not the officers violated any of the defendants' rights by going further and searching the motor vehicle or whether the officers, having found no weapons on the pat-down search, should have permitted the occupants of the vehicle to return to the vehicle without securing that vehicle to assure that there were no guns in the vehicle. Stating the question states the answer. The same exigencies, articulable suspicion, and justification that allows the pat-down search for the protection of the officers and the public, allows the minimal intrusion into the vehicle compartment to make sure the vehicle was safe for the public and the officers. To conduct a protective weapons search of the car, the police are required to conform to the [Terry] standard. Here the information and confirmation of same provides the basis for the validity of the stop and the scope of the search to the inner compartment of the vehicle was reasonably confined to safety concerns.
(citations omitted.)
On appeal, defendant raises the following points:
POINT I
THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING [DEFENDANT'S] MOTION TO SUPPRESS THE EVIDENCE SEIZED WHERE THE POLICE ILLEGALLY STOPPED AND SEARCHED THE VEHICLE WITHOUT PROBABLE CAUSE.
a. The information provided by an unnamed informant did not provide an objectively reasonable suspicion necessary to justify the "stop and frisk" of the individuals in the vehicle.
b. The officers did not have an articulable suspicion that the occupants of *801 the vehicle posed a danger justifying the warrantless search of the vehicle.
POINT II
THE COURT ABUSED ITS DISCRETION IN SENTENCING [DEFENDANT] TO AN EXTENDED TERM OF IMPRISONMENT AND DID NOT ADEQUATELY CONSIDER THE MITIGATING FACTORS IN THIS CASE.
POINT III
PURSUANT TO THE NEW JERSEY SUPREME COURT'S RECENT HOLDING IN STATE V. PIERCE, DEFENDANT'S SENTENCE MUST BE VACATED AND HIS CASE REMANDED TO THE LOWER COURT FOR RESENTENCING.
Defendant challenges both the stop and entry into the vehicle to search for the weapon. The State asserts that the anonymous tip provided a reasonable suspicion to permit the stop and search of the Durango, thus passing constitutional muster. The State also argues, for the first time on appeal, that because defendant abandoned the gun he is not afforded protection under the Fourth Amendment.
The United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV, § 1; see also N.J. Const. art. I, ¶ 7. Whether a seizure or stop is unreasonable is often times a "complex" issue "peculiarly dependent upon the facts involved." State v. Anderson, 198 N.J.Super. 340, 348, 486 A.2d 1311 (App.Div.) (citing State v. Funicello, 60 N.J. 60, 72, 286 A.2d 55 (Weintraub, C.J., concurring), cert. denied, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972)), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985). The circumstances here involve the validity of the police officers' stop and search under Terry, specifically, the "protective stop" exception. See State v. Roach, 172 N.J. 19, 796 A.2d 214 (2002). Under the protective stop exception, the State must demonstrate that the police had an objective, articulable, and reasonable basis to believe the subject of the stop was armed and dangerous. Id. at 27, 796 A.2d 214.
The propriety of the investigatory stop also involves the community caretaking function and the common law right to inquire based upon the belief that criminal activity may be involved. Generally, investigatory stops of automobiles are justified by a reduced expectation of privacy by an occupant of an automobile. United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084-85, 49 L.Ed.2d 1116, 1130 (1976). A police officer may stop a motor vehicle where there is a reasonable or articulable suspicion that a motor vehicle violation has occurred. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Carter, 235 N.J.Super. 232, 237, 561 A.2d 1196 (App.Div.1989); State v. Nugent, 125 N.J.Super. 528, 534, 312 A.2d 158 (App. Div.1973); State v. Griffin, 84 N.J.Super. 508, 516, 202 A.2d 856 (App.Div.1964).
The community caretaking function may also be implicated where something abnormal is observed concerning the operation of a motor vehicle. State v. Martinez, 260 N.J.Super. 75, 78, 615 A.2d 279 (App.Div.1992). Such abnormal situations may be suggested by a number of objectively reasonable concerns:
(a) something might be wrong with the car; (b) something might be wrong with its driver; (c) a traffic safety hazard is presented to drivers approaching from the rear when an abnormally slow moving vehicle is operated at night on a roadway without flashers; (d) there is some risk that the residential neighborhood *802 is being "cased" for targets of opportunity.
[Ibid.]
We also recognized that the first three concerns triggered the "community caretaking function," while the fourth implicated the "common-law right to inquire" based upon a founded suspicion that criminal activity might be afoot. Ibid.
An "anonymous tip standing alone cannot justify a Terry stop." State v. Richards, 351 N.J.Super. 289, 303-04, 798 A.2d 136 (App.Div.2002); see also Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In J.L., the United States Supreme Court declined to adopt the "man with a gun" exception to justify a Terry stop and frisk based upon an anonymous tip alone. J.L., supra, 529 U.S. at 272-74, 120 S.Ct. at 1379-80, 146 L.Ed.2d at 260-62. The Court held that an anonymous tip based upon a "bare report of an unknown, unaccountable informant" lacks the "indicia of reliability" to justify a stop and frisk. Id. at 271, 120 S.Ct. at 1379, 146 L.Ed.2d at 260. This is especially so where the tip is not recorded as it would be in a 9-1-1 call, or where the tipster is unknown. See State v. Golotta, 178 N.J. 205, 225-26, 837 A.2d 359 (2003). Golotta involved a 9-1-1 call where the anonymous caller reported a pickup truck being driven erratically. The Court distinguished between an anonymous tip of erratic driving and a tip regarding a person with a gun.
Perhaps most important, here the officer was confronted with a risk of imminent danger to defendant and to the public, a circumstance that allowed the officer less corroboration time than if the tip had alleged that an individual standing passively on the street corner was carrying a concealed weapon. Although unlawfully concealing a weapon poses a public-safety risk, driving a pickup truck erratically on a highway such as Route 206 is a more immediate threat. In such urgent situations, a police officer need not wait for corroboration that might be fatal to an innocent member of the public or to the driver himself.
[Id. at 226, [837 A.2d 359].]
The Golotta Court explained that the "nature of the intrusion," specifically, the difference between "an investigatory stop" and a "full-blown search" are relevant circumstances to be considered "in assessing the reasonableness of the government's conduct." Id. at 220, 837 A.2d 359. It distinguished "the narrow question," where the anonymous call forms the basis for a stop, from the more intrusive conduct of a search of the contents of a vehicle. Id. at 226, 837 A.2d 359.
In the present case, the police officers received a dispatch that headquarters had gotten an anonymous tip that someone in a burgundy Durango with a temporary tag was flashing a gun at a certain location. It was 2:30 a.m. When they arrived at the location, they found the vehicle, as described, parked, with three occupants inside. Under their community caretaking function, the police were justified, absent the tip, in conducting an investigatory stop to determine if help was needed based on the circumstances of an occupied vehicle parked on the roadway in the wee hours of the morning. Beyond that, the existence of the tip, the lateness of the hour, and the confirmation of the type, color, and location of the vehicle reported in the tip justified an investigatory stop to permit the police to inquire as to what the occupants of the Durango were doing. See State v. Nishina, 175 N.J. 502, 513, 816 A.2d 153 (2003).
Where we part company with the State is with its contention that the tip provided justification for Terry pat-down searches and the search of the vehicle. The pat-down searches of the driver and *803 occupants and the search of the Durango were based solely on an unidentified anonymous tip. There are simply no other facts in the record demonstrating that the police had an objectively articulable and reasonable basis to believe the subject of the stop was armed and dangerous. The circumstances also did not present a well-grounded suspicion that a crime had been or was about to be committed. State v. DeLuca, 168 N.J. 626, 632-33, 775 A.2d 1284 (2001). Similar to the circumstances in J.L., all the police had to go on was the "bare report of an unknown, unaccountable informant" that someone was seen flashing a gun. See J.L., supra, 529 U.S. at 271, 120 S.Ct. at 1379, 146 L.Ed.2d at 260. There is nothing in the record before us establishing the required indicia of reliability to justify the more intrusive pat-down or vehicular searches.
We briefly address the State's claim that defendant abandoned the gun, thereby relinquishing his expectation of privacy under the Fourth Amendment. Generally, we decline to consider issues that were not presented at trial. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998); Saul v. Midlantic Nat'l Bank/S., 240 N.J.Super. 62, 82, 572 A.2d 650 (App.Div.), certif. denied, 122 N.J. 319, 585 A.2d 338 (1990). It is well settled that "[q]uestions not raised below `will ordinarily not be considered on appeal.'" State v. Cryan, 320 N.J.Super. 325, 332, 727 A.2d 93 (App.Div.1999) (quoting State v. Bobo, 222 N.J.Super. 30, 33, 535 A.2d 983 (App.Div.1987)); see also State v. Lakomy, 126 N.J.Super. 430, 437, 315 A.2d 46 (App.Div.1974). The State's contention that defendant abandoned the gun was not argued in the Law Division as a basis for resisting defendant's motion to suppress. Consequently, it was never ruled upon by the trial judge and the record was not fully developed in that regard. We must, of course, consider the suppression motion solely on the evidence presented at the hearing below. See State v. Gibson, 318 N.J.Super. 1, 9, 722 A.2d 960 (App.Div.1999). Nevertheless, we consider the issue.
The State bases heavy reliance on State v. Burgos, 185 N.J.Super. 424, 449 A.2d 536 (App.Div.1982), in support of its contention that defendant abandoned the gun. It argues that "defendant's act of placing the gun under the front seat of a car that did not belong to him and then exiting the vehicle should be viewed as analogous to a drug dealer stashing narcotics." In Burgos, we held that the defendant who stashed his drugs underneath a parked car on a public street "had no protected Fourth Amendment rights in the narcotics stash maintained remotely from his person." Id. at 426, 449 A.2d 536. Quoting from the Supreme Court of Minnesota, in City of St. Paul v. Vaughn, 306 Minn. 337, 237 N.W.2d 365 (1975), we noted:
"[T]he question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy. . . .
Where the presence of the police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for the purposes of search and seizure."
[Burgos, supra, 185 N.J.Super. at 427 [449 A.2d 536] (quoting Vaughn, supra, 237 N.W.2d at 370-71) (internal citations omitted).]
Defendant testified at his plea hearing that no one was in the car when he placed the gun under the passenger seat. He claims that the other occupants did not know it was there. However, we need not rely on defendant's testimony to resolve the abandonment issue because the police *804 were not lawfully in the vehicle when they conducted the search. Beyond that, the Durango was not a public place. Although not the basis for our decision, defendant's testimony that he did not tell the others that he had hidden it under the seat is consistent with a continued expectation of privacy. Indeed, the State's dismissal of the indictment against the other occupants is indicative that the State had no proof to the contrary. We reject the State's contention that the evidence established that defendant abandoned the gun.
Finally, we note that when defendant provided the factual basis for his plea to resisting arrest he agreed that he used force against the police after they informed him that he was under arrest for disorderly conduct. Thus, the resisting arrest offense was not connected to the arrest resulting from the search and recovery of the gun. Accordingly, we reverse only those convictions for unlawful possession of a weapon and possession of a weapon by those previously convicted.
The State concedes that defendant is otherwise entitled to a remand on the extended term imposed under State v. Pierce, 188 N.J. 155, 902 A.2d 1195 (2006). However, defendant's challenge to the extended term imposed on the conviction for possession of a weapon by those previously convicted is rendered moot by our decision reversing that conviction. Defendant does not challenge the five-year sentence imposed for resisting arrest. The matter is therefore remanded for entry of a judgment in accordance with this opinion.
Reversed in part and remanded.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Defendant and four other individuals were charged as codefendants. The charges against the codefendants were later dismissed.
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).