**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0128-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRUCE A. POOLE, a/k/a
BRUCE POOL,

     Defendant-Appellant.

_____

Submitted April 28, 2021 – Decided June 25, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 18-08-0457.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Taylor S. Hicks, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress a handgun seized from his pocket during a pat-down frisk by police, defendant Bruce A. Poole pleaded guilty to second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b)(1), and was sentenced to a five-year custodial term with a five-year period of parole ineligibility. Defendant appeals from his conviction, challenging the denial of his suppression motion. Defendant contends the frisk was unlawful because the State's evidence did not establish the police had a reasonable suspicion he possessed a weapon, and the search of his person was otherwise improper because the police did not have probable cause to believe he possessed marijuana. Unpersuaded by defendant's arguments, we affirm.

I.

During the hearing on defendant's suppression motion, the State presented the testimony of Trenton Police Department officer Chelsea Quinlan and detective Matthew Hutchinson. Their testimony, which the court found credible, established that during the afternoon of June 27, 2018, Quinlan and police officer John Murphy responded in a marked police vehicle to a report of "shots fired" on East State Street in Trenton.[1] The location at which it was reported

---

[1] On June 27, 2018, Quinlan was a police officer assigned to the patrol unit. When she testified at the suppression hearing, she held the title of detective.

A-0128-19

the shots were fired is within a known high-crime area characterized by illegal narcotics distribution and gun violence. Days earlier, there was a homicide, as well as a separate shooting, in the area. The Trenton Police Department's Intelligence Unit had reported to the officers and detectives that gangs were going "back and forth retaliating against each other for the shootings."

As Quinlan and Murphy approached East State Street in their marked patrol vehicle with its lights and siren activated, Quinlan observed a black Chevy Impala with "heavily tinted windows" in the "front and back" and a temporary Pennsylvania license plate traveling towards them "at a high rate of speed." The Impala made a "wide left turn." Quinlan testified vehicles with heavily tinted windows and temporary license plates are frequently used in drive-by shootings, and that heavily tinted windows constituted a violation of the motor vehicle code. The Impala was traveling in a direction away from the location Quinlan understood the reported shots had been fired.

The officers conducted a motor vehicle stop of the Impala. Quinlan approached the driver's side of the vehicle, and Murphy approached the passenger side. The officers observed three people in the car: the driver, defendant; a front passenger; and a rear passenger. The officers also detected the odor of marijuana emanating from the vehicle.

A-0128-19

Quinlan and Murphy returned to their patrol car and requested backup officers for safety reasons because there were two officers on the scene and three occupants in the Impala. While in their patrol car, the officers were informed the "shots fired" call they had received was a false alarm and the alleged shots had been firecrackers.

Hutchinson, who was assigned to the Trenton Police Department's Street Crimes Unit, and his partner, Detective Vitter, responded to the scene of the motor vehicle stop.[2] They parked their police vehicle in front of the Impala. After exiting the car, Vitter directed the occupants of the Impala "to show their hands and keep [their] hands where [the officers] could see them." The two passengers in the vehicle complied with Vitter's directive, but defendant did not. Instead, he made "movements toward[s] his lap area." As Hutchinson moved towards the Impala, he detected the odor of marijuana emanating from it.

After conferring with Hutchinson, Quinlan advised the Impala's occupants that she smelled marijuana and asked them to remove themselves from the car. Hutchinson removed defendant, who appeared to be "preoccupied with something in his pants pocket," almost as if he was trying to hide something. Hutchinson observed that defendant kept looking "back and forth" "towards" his

_____

[2] The record does not include Detective Vitter's first name.

4

pocket, he kept "his hand towards his lap area, his pocket area, almost to be in that specific area of his pocket," and "it seemed like there was something in [defendant's] pocket he didn't want [Hutchinson] to see." Hutchinson testified defendant's movements towards his lap area, his noncompliance with the initial order to show his hands, the recent and recurring gun violence in the high-crime area where the Impala was stopped, and Hutchinson's suspicion that defendant possessed marijuana caused him to believe that defendant might possess a weapon. Hutchinson therefore decided to conduct a pat-down frisk of defendant for weapons.

While performing the frisk, Hutchinson felt the outline of an object in defendant's pocket he recognized as consistent with the size and shape of a handgun. Hutchinson seized the object, a .22 caliber semi-automatic handgun, from defendant's pocket. Officers arrested defendant and subsequently searched the Impala, where they found and seized marijuana in the front driver's side floorboard.

Following the presentation of evidence at the suppression hearing, the court found the officers had reasonable suspicion to stop the Impala for the motor vehicle violations of careless driving, N.J.S.A. 39:4-97, and having heavily tinted windows, N.J.S.A. 39:3-75. The court noted the officers observed

5

the Impala traveling at a high rate of speed and turning abruptly, and the car was stopped in a high-crime area. The court further found removal of defendant from the car was lawful because the officers detected the "distinct odor of marijuana emanating from the vehicle."

The court found Hutchinson's pat-down frisk was proper because defendant "was concerned with his pocket," he "was the one who was operating the vehicle" when it was stopped, "and the smell of weed . . . emanated from the car." The court further determined the officers had probable cause to search the vehicle because they seized a handgun from defendant and otherwise detected the odor of marijuana emanating from the vehicle.

The court entered an order denying defendant's motion to suppress evidence seized without a warrant. Defendant subsequently pleaded guilty to second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b)(1), and was sentenced to a five-year custodial term with a five-year parole ineligibility period.[3] This appeal followed.

Defendant presents the following argument for our consideration:

---

[3] Pursuant to defendant's plea agreement, the court dismissed two other counts in the indictment charging offenses arising from the June 27, 2018 motor vehicle stop.

AFTER OFFICERS LEARNED THAT A REPORT OF SHOTS FIRED IN THE AREA WAS FALSE, THERE WAS NO CONSTITUTIONAL BASIS TO FRISK THE OCCUPANTS OF [THE] STOPPED CAR. U.S. Const., [a]mends. IV, XIV; N.J. Const., [a]rt. I., [¶] 7.

## II.

"When [an appellate court] review[s] a trial court's denial or grant of a motion to suppress, [it] 'defer[s] to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Vincenty, 237 N.J. 122, 131-32 (2019) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). We defer to the trial court's factual findings unless they are "clearly mistaken." State v. Hathaway, 222 N.J. 453, 467 (2015). In contrast, "[a] trial court's interpretation of the law . . . and the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014).

Defendant makes a precise and limited argument on appeal. He does not dispute that the officer's observations of the manner in which he operated the Impala, as well as the vehicle's heavily tinted windows, provided a reasonable and articulable suspicion he committed motor vehicle violations supporting the motor vehicle stop. See State v. Bacome, 228 N.J. 94, 103 (2017) ("To be

lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" (quoting State v. Carty, 170 N.J. 632, 639-40 (2002))). He also does not challenge the officer's directive that he exit the vehicle following the stop. See State v. Smith, 134 N.J. 599, 611-12 (1994) (explaining "once a motor vehicle has been lawfully [detained,] . . . police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription against unreasonable searches and seizures" (quoting Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977))). Defendant argues only that the frisk was unlawful because the officers lacked an objectively reasonable basis to suspect he had a weapon or was dangerous.

"The Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution require that police officers obtain a warrant 'before searching a person's property, unless the search "falls within one of the recognized exceptions to the warrant requirement."'" State v. Cassidy, 179 N.J. 150, 159-60 (2004) (quoting State v. DeLuca, 168 N.J. 626, 631 (2001)). Where a search is conducted without a warrant, the State has the burden to prove, by a preponderance of evidence, that it "falls within one of the few

well-delineated exceptions to the warrant requirement." State v. Pineiro, 181 N.J. 13, 19-20 (2004) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

Included among the "constitutionally permissible forms of police encounters that do not constitute searches or seizures for purposes of the warrant requirement" is "an investigatory stop, sometimes referred to as a 'Terry' stop or a 'stop and frisk.'"[4] State v. Privott, 203 N.J. 16, 24-25 (2010) (footnote omitted). A "frisk" is "a carefully limited search of the outer clothing of [a suspect] [] in an attempt to discover weapons which might be used to assault [an officer]." Id. at 26 (second alteration in original) (quoting Terry, 392 U.S. at 30). An officer may lawfully frisk a suspect when he or she has "a 'specific and particularized basis for an objectively reasonable suspicion that [the suspect is] armed and dangerous.'" State v. Roach, 172 N.J. 19, 27 (2002) (quoting State v. Thomas, 110 N.J. 673, 683 (1988)); see also State v. Matthews, 398 N.J. Super. 551, 557 (App. Div. 2008). Conversely, an officer's frisk for weapons is unlawful if he or she lacks an objectively reasonable and articulable suspicion to believe a suspect is armed and dangerous. Thomas, 110 N.J. at 679 (quoting Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979)).

---

[4] The United States Supreme Court established the standard for constitutionally permissible investigatory stops and pat-down frisks in Terry v. Ohio, 392 U.S. 1 (1968).

A-0128-19

"The existence of an objectively reasonable suspicion is based on the totality of the circumstances." Roach, 172 N.J. at 27 (citing State v. Valentine, 134 N.J. 536, 546 (1994)). Even "a group of innocent circumstances in the aggregate can support a reasonable suspicion finding." State v. Bard, 445 N.J. Super. 145, 160 (App. Div. 2016) (citing State v. Stovall, 170 N.J. 346, 368 (2002)). Factors that support an articulable and reasonable suspicion a suspect is armed and dangerous include: a stop occurring in a high-crime area, see Privott, 203 N.J. at 26; see also Valentine, 134 N.J. at 547 (explaining "the location of the investigatory stop can reasonably elevate a police officer's suspicion that a suspect is armed"); the knowledge and experience of police officers, see Valentine, 134 N.J. at 547 ("Terry itself acknowledges that police officers must be permitted to use their knowledge and experience in deciding whether to frisk a suspect."); see also Bard, 445 N.J. Super. at 156-57; and a suspect's movements towards a waistband, pocket, or other area of the body where the suspect is likely to conceal a weapon, see, e.g., Privott, 203 N.J. at 29; Bard, 445 N.J. Super. at 157-58; State v. Bellamy, 260 N.J. Super. 449, 457 (App. Div. 1992).

In assessing "the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police-citizen

encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" Privott, 203 N.J. at 25-26 (quoting State v. Davis, 104 N.J. 490, 504 (1986)). "[A]n 'officer need not be absolutely certain that the individual is armed'"; "the test under Terry 'is whether a reasonably prudent man [or woman] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" State v. Diloreto, 180 N.J. 264, 276 (2004) (quoting Terry, 392 U.S. at 27). "[T]he same conduct that justifies an investigatory stop may also present the officer with a specific and particularized reason to believe that the suspect is armed." Privott, 203 N.J. at 30.

Here, as noted, the officers stopped the vehicle in a high-crime area known for gun violence and illegal narcotics distribution. There had been a murder and another shooting in the area in the days preceding the motor vehicle stop, and the police department's intelligence unit informed the officers that gangs were retaliating against each other in response to shootings. Based on their experience, the officers understood that vehicles with heavily tinted windows and temporary out-of-state license plates, like the Impala defendant operated, were frequently used in drive-by shootings. In addition, after the motor vehicle stop, defendant failed to comply with the officer's directive to show his hands

11

and keep his hands where they could be seen, and instead kept his hands near his lap. Once he exited the vehicle, defendant kept his hand near his pocket as he continuously looked toward his pocket. Further, the officers detected the odor of marijuana emanating from the vehicle, and thereby reasonably understood defendant was engaged in criminal activity.[5] In our view, that

---

[5] Our Supreme Court has held that mere suspicion a suspect is in possession of an illegal drug is insufficient to support a pat-down search, but the Court also explained it did not adopt a "hard and fast rule that suspicion of illegal drug possession never can form the basis for a protective search of a suspect." Thomas, 110 N.J. at 685. Contrary to defendant's contention, the motion court did not base its finding the pat-down frisk was lawful only upon the officers' detection of the odor of marijuana, and we do not find the officers' detection of the odor alone permitted the pat-down frisk. The odor of marijuana, however, supported a suspicion defendant was engaged in criminal activity, see State v. Nishina, 175 N.J. 502, 515-16 (2003) (finding the odor of marijuana supports a probable cause finding that a crime has been or is going to be committed), and thereby constituted a proper factor in the totality of the circumstances presented supporting an objectively reasonable basis to believe defendant was armed, see, e.g., Valentine, 134 N.J. at 551 (explaining an officer's reasonable suspicion a suspect "was engaged or about to become engaged in criminal activity" is a factor to be considered among the totality of the circumstances to determine if a pat-down search is justified); see also United States v. Oates, 560 F.2d 45, 62 (2d Cir. 1977) (noting courts "have recognized that to 'substantial dealers in narcotics[,]' firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia" (quoting United States v. Wiener, 534 F.2d 15, 18 (2d Cir. 1976))). We note that following the February 22, 2021 effective date of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, L. 2021, c. 16, the odor of marijuana "shall not constitute reasonable articulable suspicion to initiate a search of a person to determine" if a suspect committed the fourth-degree offense of possession of more than six ounces of marijuana as proscribed in N.J.S.A. 2C:35-10(a)(3)(b). N.J.S.A. 2C:35-10(a)(3)(b)(i).

A-0128-19

confluence of circumstances, when considered in its totality, established an objectively reasonable basis supporting a belief by a reasonably prudent officer that his or her safety was in danger and defendant was armed. See Terry, 392 U.S. at 27; Diloreto, 180 N.J. at 276; see also Thomas, 110 N.J. at 679 (explaining the reasonableness of a pat-down frisk is measured by an objective standard and not the subjective impressions of the officers).

During the frisk, Hutchinson felt the outline of an object that he recognized as consistent with the size and shape of a handgun in defendant's right pants pocket. When "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent," that contraband lawfully may be seized without a warrant. State v. Evans, 235 N.J. 125, 136 (2018) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)). Accordingly, the seizure of the handgun from defendant's pocket was lawful, ibid., and the court correctly denied defendant's suppression motion.[6]

---

[6] We also observe that even if the frisk was unlawful, the evidence presented at the hearing supports the court's order denying the suppression motion. "[T]he inevitable discovery doctrine allows for the admission of evidence obtained through law enforcement's unconstitutional conduct if that evidence would have been discovered in the absence of that unlawful conduct." State v. Camey, 239

N.J. 282, 301 (2019). Under this doctrine, the State bears the burden of proving by clear and convincing evidence that

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [State v. Maltese, 222 N.J. 525, 552 (2015) (quoting State v. Johnson, 120 N.J. 263, 289 (1990)).]

Here, the evidence established the officers' detection of the odor of marijuana in the Impala following the unanticipated motor vehicle stop provided probable cause for a permissible search of the vehicle. State v. Rodriguez, 459 N.J. Super. 13, 22, 25-26 (App. Div. 2019); see also State v. Witt, 223 N.J. 409, 447-48 (2015). Thus, independent of the pat-down frisk, the officers would have searched the vehicle and discovered the marijuana. Upon seizing the marijuana, it would have been both proper and normal for officers to arrest the vehicle's occupants, including defendant who operated the vehicle, and search the occupants incident to arrest. See State v. Oyenusi, 387 N.J. Super. 146, 154 (App. Div. 2006) (recognizing an officer may search a suspect incident to an arrest "to disarm the arrestee and preserve evidence for later use at trial"). Once officers searched defendant incident to his arrest, they would have immediately discovered the handgun in defendant's pocket. In other words, even if officers did not frisk defendant, they would have inevitably discovered the handgun on his person after arresting him for possession of marijuana and searching him incident to arrest. Thus, assuming Hutchinson's frisk of defendant was unlawful, the handgun was otherwise admissible under the inevitable discovery doctrine.

14

To the extent we have not expressly addressed any other of defendant's contentions, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0128-19