**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2388-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SINCERE DANIELS,

      Defendant-Appellant.

_____

Submitted March 18, 2024 – Decided August 1, 2024

Before Judges DeAlmeida and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 22-06-1475.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Nadine Kronis, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Sincere Daniels appeals from an order denying his motion to suppress evidence seized pursuant to a warrantless search. Following our review of the arguments and applicable law, we conclude the trial court erred in denying defendant's motion to suppress because the totality of the circumstances does not establish a reasonable articulable suspicion for the investigatory stop of defendant. We reverse the order denying defendant's motion to suppress the evidence, vacate his guilty plea, and remand for an evidentiary hearing.

I.

No evidentiary hearing was held. Therefore, we recite the facts as represented in the parties' submissions and by the trial court from its in-court-viewing of the body worn camera footage of Newark Detective Steven Resendes. The parties stipulated to the facts stated in the incident report prepared by Resendes.

On March 15, 2022, at approximately 4:15 p.m., a lieutenant from the Criminal Intelligence section assigned Resendes to investigate an anonymous tip from the Newark Police Department's Gun Stoppers hotline. The lieutenant relayed that a tipster provided information that at Columbia Avenue and South Orange Avenue, "a black male wearing a black sweatsuit and grey sneakers ha[d] a gun on him" and that "the male was standing near a male who [was]

A-2388-22

wearing a grey sweatsuit." No information was provided concerning the tipster or how the lieutenant obtained the information.

In three unmarked cars, Newark officers dressed in plainclothes and displaying police badges responded to that intersection. In his report, Resendes reported that he and his partner approached the intersection of Columbia Avenue and South Orange Avenue and saw a group of males congregated in front of 773 South Orange Avenue. A black male wearing a black sweatsuit and gray sneakers, later identified as defendant, stood near the other male wearing a grey sweatsuit. According to the report, while traveling westbound on South Orange Avenue, Resendes saw the male in the grey sweatsuit "tap" defendant on the arm while looking at his police car. Resendes wrote that while traveling toward Cedar Avenue, defendant turned and faced his police car and "immediately" turned his back to the car. As Resendes approached Cedar Avenue, defendant was "still looking" at the police car while holding the front waistband of his sweatpants.

As three other officers were traveling westbound on South Orange Avenue from Columbia Avenue, Resendes radioed: "He's right there on the right." According to the report, as Resendes made a U-turn at the intersection of South Orange Avenue and Cedar Avenue, defendant began to walk toward the street.

3

Resendes pulled his car into the parking lot of 773 South Orange Avenue, and defendant started walking toward the southbound sidewalk of South Orange Avenue while looking at Resendes's police car with his hand in the front waistband.

Four officers exited their police car and yelled: "Newark Police stop." Defendant ran with his cellphone in one hand and his other hand remained in his front waistband towards Resendes and his partner. As defendant approached the northbound sidewalk of South Orange Avenue, he fell to the ground, dropped his cellphone and kept his hand in the front waistband.

The report stated another detective "immediately grabbed" defendant's right arm and placed it around his back. At the same time, a different detective attempted to grab defendant's left hand from under his body and shouted the Newark police code word for "Gun." Resendes assisted the second detective in lifting defendant's left arm and placed it behind defendant's back. Detectives picked up defendant off the ground and Resendes retrieved a ".45 caliber Kimber handgun" loaded with ammunition from defendant's waistband. Defendant was arrested and placed in the back of the unmarked vehicle. A computer search revealed the handgun was reported stolen from South Carolina.

4

A grand jury indicted defendant on charges of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and third-degree receiving stolen property, N.J.S.A. 2C:20-7(a).

Defendant moved to suppress the evidence obtained during the stop. He challenged whether the officers responding to the anonymous tip had a reasonable suspicion of criminal activity to justify the stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968). Defendant argued that the anonymous tipster was not reliable and provided only a description of clothing worn by defendant and another male. He also relied on State v. Tucker, 136 N.J. 158, 169 (1994), arguing that flight alone is not ample evidence of reasonable suspicion.

In a written opinion, the court denied defendant's motion, finding that the totality of the circumstances, based on the officers' training and experience, which was not included within the report, as well as the anonymous tip and defendant's actions, justified a reasonable suspicion to stop and frisk defendant. At the outset, the court rejected the State's argument that the plain view exception to warrantless searches applied. The court then analyzed the veracity, reliability, and the basis of knowledge of the anonymous tip. The court citing

5

State v. Matthews, 398 N.J. Super. 551, 559 (App. Div. 2008), reasoned that "unlike a tip from an ordinary citizen, an anonymous tip alone generally lacks the veracity, reliability, and basis of knowledge needed for an officer to have the reasonable suspicion required for a stop." The court concluded that tip was unreliable because it provided information about defendant's appearance and location and no other information that explained why defendant possessed a gun.

Nevertheless, the court found that under the totality of the circumstances, the officers had a reasonable suspicion of criminal activity because "other evidence arose before the seizure began [that] corroborate[d] the tip." In particular, after defendant was alerted of the officers' presence, he began walking away with his hand in the front waistband of his sweatsuit. The court determined that action "suggested defendant was trying to prevent an object too heavy for a waistband to constrain from falling out of the bottom of his sweatpants." That conclusion, however, was not stated in the police report.

Following the denial of the motion, defendant pleaded guilty to second-degree unlawful possession of a weapon and was sentenced in accordance with the plea agreement to a four-year prison term with one year of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

A-2388-22

On appeal, defendant argues the trial court erred in denying his motion to suppress because the police lacked a reasonable and articulable suspicion for the stop.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44 (2011). We apply our familiar deferential standard of review. State v. Nyema, 249 N.J. 509, 526 (2022). "'[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.'" State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). In contrast, the trial court's interpretation of the law and the legal "'consequences that flow from established facts'" are reviewed de novo. Ibid. (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)); State v. Tiwana, 256 N.J. 33, 40 (2023).

The Fourth Amendment to the United States Constitution and Art. I § 7 of the New Jersey Constitution protect the right of individuals from unreasonable searches and seizures. State v. Smart, 253 N.J. 156, 164 (2023) (quoting Nyema, 249 N.J. at 527). The parties do not dispute that an investigatory stop occurred.

The Terry stop, or an investigative stop, "involves a relatively brief detention by police during which a person's movement is restricted." State v.

Goldsmith, 251 N.J. 384, 399 (2022); see also State v. Rosario, 229 N.J. 263, 272 (2017). An investigative stop or detention "is constitutional only 'if it is based on "specific and articulable facts which, taken together with rational inferences from those facts," give rise to a reasonable suspicion of criminal activity.'" Elders, 192 N.J. at 247 (quoting State v. Rodriquez, 172 N.J. 117, 126 (2002)).

The State has the burden to establish that a stop was valid. State v. Mann, 203 N.J. 328, 337-38 (2010); State v. Pineiro, 181 N.J. 13, 19-20 (2004). The standard of reasonable suspicion is less rigorous than probable cause to warrant an arrest. Terry, 392 U.S. at 26-27; State v. Shaw, 213 N.J. 398, 410 (2012). If there was no reasonable suspicion of criminal activity to justify the stop, evidence discovered because of the stop is subject to exclusion. State v. Chisum, 236 N.J. 530, 546 (2019).

In considering whether the officer had a reasonable suspicion to stop defendant, we begin our review of the anonymous tip provided to the Gun Stoppers hotline. "In determining the reliability of a tip, a court must consider an informant's 'veracity,' 'reliability,' and 'basis of knowledge.'" State v. Stovall, 170 N.J. 346, 362 (2002) (quoting Alabama v. White, 496 U.S. 325, 328-29 (1990)). To determine the informant's "basis of knowledge," "the nature and

details revealed in the tip may imply" that the knowledge of the criminal activity comes from a "trustworthy source." Stovall, 170 N.J. at 362. "In determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances-the whole picture.'" Id. at 361 (internal citations omitted). The reliability of the tip is part of the totality of the circumstances analysis. Id. at 361-62.

In that regard, our Supreme Court has held that an anonymous tip without more "is rarely sufficient to establish a reasonable articulable suspicion of criminal activity." Rodriquez, 172 N.J. at 127 (internal citation omitted). "An 'anonymous tip standing alone cannot justify a Terry stop.'" State v. Richards, 351 N.J. Super. 289, 303-04 (App. Div. 2002). "To justify action based on an anonymous tip, the police in the typical case must verify that the tip is reliable by some independent corroborative effort." Rodriquez, 172 N.J. at 127 (citing White, 496 U.S. at 329-30). Here, the trial court found the anonymous tip was based on a description of the clothing worn by defendant and another male with no other facts. Accordingly, the court correctly ruled the anonymous tip was unreliable because it provided no explanation or basis of knowledge regarding defendant's appearance, location, and that he had a gun. Id. at 132-33.

9

We conclude reasonable suspicion did not exist under the totality of the circumstances for the investigatory stop. As noted above, defendant was stopped based solely on an unreliable anonymous tip. With nothing more than the anonymous tip, Resendes did not have "an articulable [and reasonable] suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986).

In considering the video and the police report, the court found that defendant's avoidance of a "possible" police encounter when he was alerted to police presence and his grip on his waistband was sufficient evidence to corroborate the anonymous tip and establish reasonable suspicion. The State contends that there was sufficient corroboration based on the other male alerting defendant, followed by defendant walking away holding his waistband.

We disagree with the court's finding and the State's contention because the combination and sequence of facts does not provide a reasonable articulable basis for the stop. The police report did not state that Resendes saw the presence of a gun or that defendant was armed and dangerous. The fact that a group of males were "congregating" in front of a building does not suggest any unusual or nefarious activity. On the record before us, the totality of the circumstances

10

lacked an objectively reasonable and articulable basis for the investigatory stop of defendant and seizure of the handgun.

Even if the court considered defendant's flight after the police identified themselves and directed him to stop, the court did not consider and apply the factors to determine whether there was a "significant attenuation" between the unconstitutional stop, the flight by defendant from police, and the seizure of the handgun from defendant to purge the unlawful stop. State v. Williams, 410 N.J. Super. 549, 552. (App. Div. 2009); Shaw, 213 N.J. at 415.

Lastly, we note the trial court made two credibility determinations and two factual findings regarding reasonable suspicion based on a review of the police report and video recording. In that regard, the court found (1) the suggestion that "defendant was trying to prevent an object too heavy for a waistband to constrain from falling out of the bottom of his sweatpants" and reasonable suspicion was "based on the officers' knowledge and experience." Those facts were not presented by the State in the police report or testimony. "We ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" Goldsmith, 251 N.J. at 398 (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). In this matter, factual findings were made without the court

having the opportunity to hear and see witnesses. See State v. Parker, 459 N.J. Super. 26, 30 (App. Div. 2019). We, therefore, do not give deference to the court's factual findings.

We vacate the January 27, 2023 order denying defendant's suppression of the handgun and remand the matter for a full evidentiary hearing. On remand, we direct that a different judge conduct the hearing because the judge who decided defendant's motion has already engaged in weighing the evidence and rendered an opinion on the credibility of the defendant and officers.

Vacated, reversed, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2388-22