NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0548-16T3

STATE OF NEW JERSEY,

 Plaintiff-Appellant,

 v.

ARMANDO RAMOS,

 Defendant-Respondent.
___________________________________________________

 Argued April 25, 2017 – Decided June 26, 2017

 Before Judges Fisher, Vernoia and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Atlantic County,
 Municipal Appeal No. 0027-15.

 John J. Lafferty, IV, Assistant Prosecutor,
 argued the cause for appellant (Damon G.
 Tyner, Atlantic County Prosecutor, attorney;
 Mr. Lafferty, of counsel and on the brief).

 Louis M. Barbone argued the cause for
 respondent (Jacobs & Barbone, P.A.,
 attorneys; Mr. Barbone and John R. Stein, on
 the brief).

PER CURIAM

 In this appeal, the State challenges an order suppressing

evidence – derived from a motor vehicle stop – to support a
charge that the driver was intoxicated, N.J.S.A. 39:4-50. We

reverse because defendant's abnormal operation of his vehicle,

as he maneuvered around barrels and a road-closed sign barring

his lane of travel, justified the officer's utilization of the

community caretaker exception to the warrant requirement.

 Defendant was charged with driving while intoxicated,

N.J.S.A. 39:4-50, and other motor vehicle violations. He moved

in municipal court for suppression of evidence gathered during

the motor vehicle stop; the judge considered that question at a

suppression hearing. The only witness – the police officer who

conducted the motor vehicle stop – testified that, around

midnight on June 24, 2014, he was on duty and assigned to

traffic detail concerning road construction on Route 54.

Specifically, he was stationed at what is depicted in the

diagram below as Intersection A:

 2 A-0548-16T3
 Route 54
 - - - - - - - - - - - A - - - - - - - - - B - -

 E

 N S

 First Chew
 W Road Road

His aim was to ensure that no northbound vehicles on Route 54

traveled further north from Intersection B, or by turning north

from either direction on Chew Road onto Route 54. In addition,

vehicles traveling on First Road into Intersection A were either

directed into the southbound lane of Route 54 or were permitted

to stay on First Road as they traveled east or west on First

Road.

 Around 2 a.m., the officer's attention was drawn to a

vehicle traveling east on Chew Road that entered Intersection B,

turning left onto Route 54 by traversing around the two barrels1

that impeded any vehicles attempting to travel north from

1
 The barrels were accompanied by a Department of Transportation
(DOT) approved road closure sign.

 3 A-0548-16T3
Intersection B toward Intersection A. This observed vehicle was

driven by defendant; his path is designated by the line that

starts at Chew Road at the bottom of the diagram and ends with

the depicted vehicle stopped at Intersection A.

 The officer testified that, as the vehicle moved toward

Intersection A, he walked into the intersection and motioned for

defendant to stop his vehicle. As with prior motorists that

night,2 the officer walked to the driver side window and inquired

about defendant's intentions in conformity with his mission to

keep vehicles from traveling north through that intersection on

Route 54. The officer testified that he "could smell an odor of

an alcoholic beverage coming from the vehicle" as he spoke with

defendant. The officer asked for credentials; defendant was slow

to comply and fumbled with his documentation. Eventually,

defendant was charged with driving while intoxicated and other

motor vehicle offenses.

 The municipal judge found from this undisputed testimony a

reasonable and articulable suspicion of a motor vehicle

violation and, also, that the stop and inquiry of defendant was

2
 During the first two hours of his tour of duty, the officer
observed five or six other vehicles enter the barricaded area.
He testified that each vehicle was stopped and each given
directions helpful to their intended course. The officer
testified Intersection B was sufficiently lit, and all drivers
entering Intersection B would have had a clear view of the
barrels and the road-closed sign.

 4 A-0548-16T3
permitted by the community caretaker exception. Consequently,

the municipal judge denied defendant's suppression motion.

 Defendant unsuccessfully moved in the Law Division for

leave to appeal the order denying his suppression motion, and

thereafter entered a conditional guilty plea. This was not

defendant's first DWI conviction. He was sentenced to 180 days

in the county jail, and a ten-year license suspension and other

monetary penalties were imposed. The municipal judge, however,

stayed the incarceration portion of the judgment, pending

disposition of defendant's appeal to the Law Division.

 In the Law Division, defendant challenged only the denial

of his motion to suppress, arguing: (1) the circumstances did

not support employment of the community caretaker exception; and

(2) the officer lacked a reasonable and articulable suspicion

that defendant violated N.J.S.A. 39:4-94.2(b) (driving on a

closed road).

 Upon de novo review, the Law Division judge found the

officer "overstepped his bounds" in performing the vehicle stop

because the State acknowledged the wrong moving violation was

issued,3 thereby conceding defendant "wasn’t in a place he wasn't

3
 As noted above, defendant was charged with driving on a closed
road, N.J.S.A. 39:4-94.2(b). During the proceedings regarding
the suppression motion, the State recognized this charge could
not be sustained, apparently because the required governmental
 (continued)

 5 A-0548-16T3
supposed to be." Further elaborating, the judge stated that

defendant's particular route into Intersection B – eastbound on

Chew Road instead of northbound on Route 54 – meant he would not

"necessarily see [the road-closed] sign." The judge surmised

that a driver could have assumed the barriers were placed to

cover or block "a pothole," or signal something other than the

roadway's closure in that direction. And, because the judge

found defendant had a right to reasonably assume the road was

not closed, there was – in the Law Division judge's view – no

ground upon which the officer's utilization of the community

caretaker exception could rest.

 In appealing the suppression order to this court, the State

argues the Law Division judge "erred in concluding that there

was no basis for stopping the defendant's vehicle under the

community caretaker exception." Specifically, the State claims

that the Law Division judge erred by "considering the reasonable

objective basis for the stop from the perspective of the

defendant instead of from the perspective of the officer" and

failed to adhere to our decisions in State v. Martinez, 260 N.J.

(continued)
action necessary to close a road within the meaning of this
statute could not be demonstrated. That fact, however, is not
conclusive on the question of whether defendant was driving
abnormally or in some way that warranted the officer's
conducting a stop for community caretaking reasons.

 6 A-0548-16T3
Super. 75, 78 (App. Div. 1992) and State v. Washington, 296 N.J.

Super. 569, 572 (App. Div. 1997). In reversing, we agree there

was "sufficient evidence on the record that [the officer]

observed the defendant operating his vehicle in an abnormal

manner – driving in the southbound lane and around the barricade

and sign, in the northbound lane – and was therefore justified

in conducting a motor vehicle stop."

 To explain, we start by invoking the Supreme Court's

description of the dual roles performed by police officers in

today's society:

 On the one hand, they carry out traditional
 law enforcement functions, such as
 investigating crimes and arresting perpetra-
 tors. On the other hand, police officers
 perform a wide range of social services,
 such as aiding those in danger of harm,
 preserving property, and creating and main-
 taining a feeling of security in the
 community.

 [State v. Bogan, 200 N.J. 61, 73 (2009).]

Differentiating between these two functions requires

consideration of the officer’s underlying motives. State v.

Diloreto, 180 N.J. 264, 276 (2004). When motivated by a desire

to "detect or solve a specific crime, such as making arrests,

interrogating suspects, and searching for evidence," an officer

acts in accord with the law enforcement function. Ibid.

"Conversely, when motivated by a desire to 'ensure the safety

 7 A-0548-16T3
and welfare of the citizenry,' the officer acts pursuant to the

community caretaking function." Ibid. "That function has its

source in the ubiquity of the automobile and the dynamic,

differential situations police officers are confronted with to

promote driver safety." Washington, supra, 296 N.J. Super. at

572. This function "finds support in the premise that abnormal

operation of a motor vehicle establishes a reasonably objective

basis to justify a motor vehicle stop." Ibid. "What is

reasonably objective is measured by the dynamics or totality of

the circumstances from the perspective of the officer on duty at

the time and not from the esoteric perspective of the

courtroom." Ibid.

 We have applied this community caretaking exception in

various similar situations. For example, in State v. Goetaski,

209 N.J. Super. 362, 364-65 (App. Div. 1986), we held that a

defendant driving slowly on a rural highway's shoulder, with a

flashing left-turn indicator, as the vehicle traveled for a

tenth of a mile justified a stop. In Martinez, supra, 260 N.J.

Super. at 77-78, we found "that operation of a motor vehicle in

the middle of the night on a residential street at a snail's

pace between five and ten m.p.h. is indeed 'abnormal'" and

justified a community-caretaker stop. It is enough that the

abnormal conduct "engenders reasonable grounds to conclude that

 8 A-0548-16T3
the vehicle is a potential safety hazard to other vehicles and

that there is either something wrong with the driver, with the

car, or both." Washington, supra, 296 N.J. Super. at 572.

 In examining the Law Division judge's decision, we only

consider "whether the motion to suppress was properly decided

based on the evidence presented at that time." State v. Jordan,

115 N.J. Super. 73, 76 (App. Div.), certif. denied, 59 N.J. 293

(1971). If there is sufficient credible evidence in the record,

we defer to the judge's findings. See State v. Elders, 192 N.J.

224, 243 (2007). The judge's legal conclusion as to the meaning

of undisputed facts, however, is not entitled to deference.

State v. Handy, 206 N.J. 39, 45 (2011).

 We reverse because we are satisfied that the judge's

factual suppositions about what defendant might have thought –

defendant, as mentioned earlier, never testified – are

inconsistent with the police officer's unrebutted testimony and,

also, because the judge misapplied the community caretaker

exception. The undisputed facts reveal the officer's stop of

defendant's vehicle occurred late at night and was based on his

observation of defendant's vehicle as it entered the wrong lane

of traffic on Route 54 by driving around barrels and a road-

closed sign that cautioned against such a movement. Defendant's

vehicle was headed toward Intersection A, where he would be

 9 A-0548-16T3
unable to travel further on Route 54. From the officer's

perspective – regardless of whether defendant's operation of the

vehicle constituted a motor vehicle violation – the vehicle was

being abnormally operated and justified the stop and the

officer's approach toward the driver to inquire about where

defendant intended to go. In this setting, application of the

community caretaker exception required no more.

 We reverse the Law Division's order of August 29, 2016,

which granted defendant's motion to suppress. We also vacate the

stay of the incarceration portion of the sentence imposed.4

4
 In granting suppression of evidence, the Law Division judge
took no further action with respect to the municipal court
judgment. For example, the Law Division judge's order did not
vacate the municipal court judgment or dismiss the charges.
Consequently, by operation of our reversal of the Law Division
order granting suppression, we assume that the municipal court
judgment remains in place and that the sentence and penalties
imposed will continue to have effect. We remand to the Law
Division judge to ensure that our mandate is carried out.

 10 A-0548-16T3