**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0611-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DONALD P. MIMNAUGH,

      Defendant-Appellant.

_____

Submitted January 25, 2021 – Decided November 8, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Municipal Appeal No. 18-78.

Kevin E. Glory & Associates, LLC, attorneys for appellant (Kevin E. Glory, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Donald P. Mimnaugh appeals the August 26, 2019 Law Division order denying his motion to suppress and finding him guilty of driving while intoxicated, N.J.S.A. 39:4-50, and guilty of refusing to submit to chemical tests, N.J.S.A. 39:4-50.4a, per a negotiated plea agreement. We affirm largely for reasons set forth by Judge Christopher R. Kazlau in his comprehensive written opinion.

I.

At approximately 2:48 a.m. on August 10, 2016, Police Officer Jeffrey Lamboy of the Palisades Interstate Parkway Police Department was patrolling a portion of the Palisades Interstate Parkway. When he entered a Mobil station on the northbound side, he saw a black Audi parked "cockeyed" in an area away from the convenience store. The "front right tire was crossing the white [parking] line that separates . . . the next parking spot." In the past, he witnessed individuals who were unable to park correctly due to intoxication, illness or fatigue. He approached the vehicle to perform a visual check. There was a person in the driver's seat, who appeared to be asleep. The windows were up.[1] There were no other occupants.

---

[1] He testified the vehicle's parking lights were off, but a poor-quality photograph in the appendix shows the headlights were on. It also shows the position of the vehicle.

Officer Lamboy knocked on the window but there was no response. He kept knocking without rousing the person. He did not know if the person was suffering a medical emergency. Officer Lamboy repositioned his patrol vehicle behind the vehicle and activated the dashcam. When he knocked again, defendant awoke — startled — and fumbled with the keys. He knocked again, and defendant rolled down the window.

Officer Lamboy smelled alcohol "emanating from the vehicle," and asked defendant to step out of the car to perform the standard field sobriety tests. Defendant admitted he had two and a half drinks earlier in the evening. The officer's report noted defendant "had bloodshot watery eyes and his face was flush along with an odor of alcoholic beverage on his breath." Defendant could not successfully perform the field sobriety tests. Officer Lamboy concluded defendant was intoxicated, placing him under arrest. Defendant was taken to the Englewood Cliffs Police Department where he refused to provide a breath sample.

Defendant was issued four summonses: driving while intoxicated (DWI), N.J.S.A. 39:4-50; refusal to submit to chemical tests, N.J.S.A. 39:4-50.4a; refusal to consent to take samples of breath samples, N.J.S.A. 39:4-50.2; and

3

unlawful parking in a designated area contrary to Palisades Interstate Park Commission, Rules and Regulations, § 411.1(f).

Defendant filed a pretrial motion in the municipal court to suppress physical evidence. He claimed the police did not have a reasonable, articulable suspicion for a motor vehicle stop and thus, did not have a valid reason to stop or to approach defendant on August 10, 2016. The State argued the stop was proper.

The municipal court judge viewed the dashcam videos. He found the officer made an appropriate inquiry of defendant, finding this was "the classic example of a field inquiry . . . overlapping with community caretaking." The court also found defendant's right front wheel was "on or over [the] white parking strip line," but it did not reach the issue of whether this was a valid motor vehicle stop. The court denied defendant's motion to suppress.

Defendant entered a conditional guilty plea to violations of N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.4a, reserving his ability to appeal the denial of his suppression motion. Defendant appealed to the Law Division.

On February 13, 2018, Judge Kazlau determined the suppression motion record was not complete.[2] He remanded the case to the municipal court to

---

[2] We were not provided a transcript of this proceeding.

"consider hearing testimony and [to] make credibility determinations, clarify any stipulations entered by the relevant parties, and delineate which items have been accepted as evidence by the court."

On remand, the municipal court judge heard testimony from Officer Lamboy. He again denied defendant's suppression motion. The judge explained that Officer Lamboy "whether as a field inquiry or community caretaking . . . was justified in making further inquiry by approaching [d]efendant's vehicle," seeing defendant asleep, and then knocking. This was "objectively, reasonable conduct" by the officer. Then, "[c]onsidering the totality of the circumstances," the municipal court judge found Officer Lamboy "was undoubtedly in possession of a reasonable and articulable suspicion that [d]efendant had been driving while intoxicated." He found Officer Lamboy was "absolutely credible" in his testimony.

On October 24, 2018,[3] Defendant again entered a conditional plea to violations of N.J.S.A. 39:4-50 and to N.J.S.A. 39:4-50.4a. The other summonses were dismissed.[4]

---

[3] We were not provided the transcript from this proceeding.

[4] Defendant was sentenced to a three-month driver's license suspension on the DWI charge, attendance at the Intoxicated Driver Resource Center (IDRC), a fine, costs, penalty, assessment and a surcharge. On the refusal charge,

Defendant appealed to the Law Division. On August 26, 2019, Judge Kazlau denied the suppression motion. Defendant was found guilty of DWI and refusal to submit to chemical tests per the negotiated plea agreement.[5]

Judge Kazlau issued a comprehensive, written decision. He found the warrantless stop satisfied two exceptions to the warrant requirement: the investigatory stop and community caretaking exceptions. Judge Kazlau found Officer Lamboy had a reasonable suspicion defendant violated the local parking ordinance. This was based on the municipal court's credibility determinations and the finding that defendant's motor vehicle crossed over the parking line. Judge Kazlau found Officer Lamboy was engaged in a community caretaking function when he approached defendant's vehicle. His attention was drawn to the vehicle because of how it was parked. He did not know if the occupant was sick or if the vehicle was disabled. He knocked on the window to see if the driver needed assistance.

defendant was sentenced to a concurrent eight-month license suspension, concurrent attendance at IDRC, further fines, costs and fees, as well as an order requiring an interlock device on his vehicle. The driver's license suspension was stayed pending appeal to the Law Division.

[5] Defendant was ordered to pay the penalties and costs imposed by the municipal court. The stay on the license suspensions and interlock device requirement was lifted.

Defendant appealed the August 26, 2019 Law Division order. He raises the following issues:

> I. THE HONORABLE CHRISTOPHER R. KAZLAU, J.S.C ERRED IN FINDING THAT OFFICER LAMBOY HAD REASONABLE SUSPICION JUSTIFYING A BRIEF INVESTIGATORY STOP OF DONALD MIMNAUGH ON AUGUST 10, 2016.
>
> II. THE HONORABLE CHRISTOPHER R. KAZLAU, J.S.C ERREDIN [sic] FINDING THAT OFFICER LAMBOY WAS ENGAGED IN COMMUNITY CARETAKING FUNCTION WHEN HE APPROACHD [sic] DONALD MIMNAUGH ON AUGUST 10, 2016.

## II.

On appeal, we consider only "the action of the Law Division and not that of the municipal court." State v. Palma, 219 N.J. 584, 591-92 (2014) (quoting State v. Joas, 34 N.J. 179, 184 (1961)). Under Rule 3:23-8(a)(2), the Superior Court makes independent findings of fact and conclusions of law de novo, based on the record from the municipal court. See State v. States, 44 N.J. 285, 293 (1965). "[T]he Law Division judge must give 'due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses.'" State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011) (quoting State v. Johnson, 42 N.J. 146, 157 (1964)). We

determine "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Locurto, 157 N.J. 463, 471 (1999). Our review of a legal determination is plenary. See State v. Handy, 206 N.J. 39, 45 (2011).

Defendant argues the trial court erred by denying his motion to suppress. He argues the Officer Lamboy did not have a reasonable suspicion to justify the investigatory stop of defendant nor was the officer involved in a caretaking function.

A.

The Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution guard citizens against unreasonable searches and seizures. "Warrantless searches and seizures presumptively violate these protections . . . , but '[n]ot all police-citizen encounters constitute searches or seizures for purposes of the warrant requirement. . . .'" State v. Rosario, 229 N.J. 263, 271 (2017) (quoting State v. Rodriguez, 172 N.J. 117, 125 (2002)). The community caretaking doctrine is an exception to the Fourth Amendment warrant requirement. State v. Cassidy, 179 N.J. 150, 161 n.4 (2004).

A-0611-19

Community caretaking by police officers includes "aiding those in danger of harm, preserving property, and 'creat[ing] and maintain[ing] a feeling of security in the community.'" State v. Bogan, 200 N.J. 61, 73 (2009) (alterations in original) (quoting Debra Livingston, Police, Community Caretaking, and the Fourth Amendment, 1998 U. Chi Legal F. 261, 271-72). The actions of the police must be "unconnected to a criminal investigation and objectively reasonable under the totality of the circumstances." State v. Diloreto, 180 N.J. 264, 278 (2004). In Bogan, the Court clarified that "[t]o hold that the police can never legitimately engage in community caretaking activities merely because they are also involved in the detection, investigation, or acquisition of evidence concerning the violation of a criminal statute could lead to absurd results." 200 N.J. at 77 (quoting State v. D'Amour, 834 A.2d 214, 218 (N.H. 2003)). "[T]he absolute separation need only relate to a sound and independent basis for each role, and not to any requirement for exclusivity in terms of time or space." Ibid. (quoting D'Amour, 834 A.2d at 217).

A court must consider whether an officer has reacted to an objectively reasonable concern. State v. Scriven, 226 N.J. 20, 39 (providing the officer must have an "objectively reasonable basis" to stop a vehicle to "mak[e] a welfare check or to render[] aid"). It must also consider whether the

caretaking function is a "pretext" for an unlawful warrantless search. Bogan, 200 N.J. at 77. In Bogan, the Court made clear that "[s]o long as the police had an independent basis for entering the apartment under the community caretaking exception that was not a pretext for carrying out an investigatory search," then it found "no bar . . . under our federal and state constitutions for the police actions in [that] case." Ibid.

We are satisfied there was sufficient, credible evidence to find the caretaking doctrine applied in this case, and that it provided an exception. Officer Lamboy observed defendant's vehicle in the Mobil gas station, parked by itself away from the convenience store, at approximately 2:48 a.m. It was parked "cockeyed" and "tilted," with the front right tire crossing over the white parking lines. This drew his attention. Given his experience, he went to see if anything was wrong. Defendant was motionless.

These facts provided an objectively reasonable and a "sound and independent basis" for Officer Lamboy's inquiry. As the Court noted in Bogan, police officers often perform the "dual roles" of law enforcement functions and ensuring community safety. 200 N.J. at 73. Here, because Officer Lamboy was fulfilling a basic community caretaking function by trying to awaken defendant to determine if he needed assistance, he was justified to

10

approach the vehicle, knock and wait for defendant to respond. He "had an independent basis, separate from any criminal investigation, to inquire . . ." about defendant's welfare. Id. at 79. There was ample, credible evidence to find the officer was performing community caretaking and not as a pretext for an investigatory search and seizure.

B.

Defendant argues the police did not have a reasonable, articulable suspicion that a motor vehicle violation or criminal violation was occurring, and thus, the motor vehicle stop was unlawful. He contends he was not free to leave the parking lot, which violated his right to be free from unconstitutional search and seizure.

An investigatory detention, also referred to as a Terry[6] stop, is another exception to the search and seizure warrant requirement. Rosario, 229 N.J. at 272. A Terry stop occurs during an encounter with the police "when 'an objectively reasonable person' would feel 'that his or her right to move has been restricted.'" Ibid. (quoting Rodriguez, 172 N.J. at 126). This type of temporary restriction "must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was

---

[6] Terry v. Ohio, 392 U.S. 1 (1968).

11

about to engage in, criminal activity.'" Ibid. (quoting State v. Stovall, 170 N.J. 346, 356 (2002)). "To determine whether the State has shown a valid investigative detention requires a consideration of the totality of the circumstances." State v. Elders, 192 N.J. 224, 247 (2007).

In Adubato, 420 N.J. Super. at 179, police officers responded to an anonymous call that a car was "continually driving around the neighborhood" and that the driver was "exiting the vehicle" repeatedly. The caller suggested the driver may be intoxicated. Ibid. An officer found defendant's car parked, activated his emergency flashers, and pulled behind the parked vehicle. He did not realize defendant was parked in front of his house. Id. at 180. He approached the driver's-side window. Id. at 174.

We found the police officer was justified in making further inquiry under the community caretaking doctrine. Id. at 181. Based on his observations that the car was "stopped on the side of the road, with the engine running, the lights on, and the driver speaking loudly on a cell phone," the officer did "not know whether he was dealing with an intoxicated driver . . . [or] someone who was looking around the neighborhood for opportunities to engage in criminal conduct." Id. at 179-80. This stop escalated to an investigative detention once the officer approached the driver's-side window,

A-0611-19

smelled alcohol, saw the driver's bloodshot eyes, and heard his slurred speech. Id. at 182. The defendant admitted he had been drinking. Ibid. We found the officer had the "factual basis for an 'articulable suspicion' that [the defendant] had engaged in criminal conduct, i.e., driving while intoxicated, sufficient to warrant a Terry stop, including administration of field-sobriety tests." Id. at 181.

In similar fashion here, Officer Lamboy approached defendant's vehicle to determine whether the driver needed assistance, and after knocking repeatedly, defendant opened the window. The officer smelled alcohol. Now, given the manner the car was parked askew in the spot, the late hour, the fact defendant was asleep behind the wheel and the smell of alcohol, Officer Lamboy had a reasonable, articulable suspicion, based on the totality of the circumstances, that defendant was driving while intoxicated, and appropriately asked him to exit the vehicle to undergo field sobriety testing.

Defendant failed the field sobriety tests and was arrested. We agree with the trial court that the totality of the circumstances — defendant's appearance, odor, actions and sobriety testing — gave Officer Lamboy a well-grounded suspicion that defendant was driving while intoxicated.

13

Officer Lamboy testified that he repositioned his police vehicle behind defendant before defendant opened his window. We do not conclude that the fact of repositioning the vehicle to use the dashcam transformed this to a Terry stop at that point. In State v. Goetaski, 209 N.J. Super. 362, 363 (App. Div. 1986), a driver was stopped because he was driving his vehicle on the shoulder of the road with the left turn signal operating for a tenth of a mile at night in a rural area. Once the trooper stopped the driver, he made observations resulting in the defendant's arrest for DWI. Ibid. We agreed the police had reason to believe there was something wrong or out of the ordinary in the manner the vehicle was proceeding. Id. at 364-65. "[W]e held that sufficiently unusual circumstances sounding in community-caretaking concepts can 'warrant the closer scrutiny of a momentary investigative stop and inquiry.'" Adubato, 420 N.J. Super. at 181 (quoting Goetaski, 209 N.J. Super. at 366).

We are satisfied there was no constitutional violation here. Even if defendant had been awake and aware that there was a police vehicle behind him, the situation encountered by Officer Laboy was out of the ordinary, sounded in community caretaking and warranted his closer scrutiny. When defendant opened the window, the smell of alcohol, combined with the other circumstances, gave the officer a reasonable suspicion of a DWI violation.

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0611-19